## BASH et al. v. HOWALD.

No. 534.    Opinion Filed November 16, 1910.

1.  **COURTS—Powers of Judge at Chambers—Dissolution of Attachment.** A motion to dissolve an attachment and to have the property restored to the defendant may be heard and disposed of by a judge at chambers.

2.  **APPEAL AND ERROR—Review—Admission of Hearsay.** Hearsay evidence having been admitted on the trial, which was liable to inflame the minds of the jury and prejudice them against the losing party, will cause reversal on review in this court.

3.  **ATTACHMENT—Bond—Attorney's Fees as Damages.** An attorney's fee is recoverable as part of the damages on an attachment bond, and it is not essential that the same shall have been previously paid by the obliger, he having incurred an obligation in good faith, in a reasonable sum therefor.

(Syllabus by the Court.)

*Error from District Court, Garfield County; M. C. Garber, Judge.*

Action between William Howald and J. H. Bash and others. From the judgment Bash and others bring error. Reversed and remanded.

*W. L. Moore* and *Rush & Steen,* for plaintiffs in error. On question of judges' powers at chambers; *Risser v. Hoyt,* 53 Mich. 185; *Schoullz v. McPhetters,* 79 Ind. 373; *Dunn v. State,* 2 Ark. 229; *Reyburn v. Bassett,* 1 Kan. 514; *Kohn v. Justice,* 1 Kan. 211; *State v. Woolson,* 161 Mo. 444; *Filly v. Cody,* 4 Colo. 109; *In re Garvey,* 7 Colo. 502; *Schlesinger v. Allen,* 69 Ill. App. 138.

WILLIAMS, J. In *Cassady et al. v. Morris,* 19 Okla. 203, 91 Pac. 888, it was held in a unanimous opinion by the Supreme Court of the territory of Oklahoma that "a motion to discharge exempt property from attachment is triable to the court or judge, and neither party is entitled to a jury." The authority of a judge at chambers to dissolve an attachment or temporary injunction seems never to have been previously questioned in the territory of Oklahoma, and this court, in *First National Bank of Hobart v.*

*Spink et al.*, 21 Okla. 468, 97 Pac. 1019, assumed that such authority existed.

In *Brown v. Epps,* 91 Va. 726 it is said:

"Cases involving the jurisdiction of justices of the peace under this and similar statutes have been frequently before this court, and in every instance, save in the case of *Mary Miller v. Commonwealth,* 88 Va. 618, the validity of the judgment based on the statute has been upheld: *Thomas' Case,* 22 Gratt. 912; *Read's Case,* 24 Gratt. 618; *Wolverton v. Commonwealth,* 75 Va. 910; and *Harrison v. Commonwealth,* 81 Va. 419. In as much, however, as it does not appear that the constitutional question here under consideration was presented to the court, in any of those cases, it is contended that they are not authorities binding upon us, and it is conceded that their weight as authority is impaired for the reason stated. It does appear, however, that the question of jurisdiction was considered by the court, and indeed underlies the exercise of jurisdiction by all courts, in all cases, whether specifically presented or not, so that where it appears that courts of all grades in the state, from justices of the peace to this court, have gone on uninterruptedly for many years to exercise jurisdiction under a statute, and that during all that time there has been no doubt entertained nor question raised as to the constitutionality of the law—when all this has been done in the presence of an able and inquisitive bar—a strong presumption is raised that the attack has not been made upon the constitutionality of the law, because, in the judgment of the courts and of the profession, no such ground of objection existed."

This statute conferring jurisdiction upon the judges at chambers to discharge attachments and dissolve injunctions was in force in the territory of Oklahoma for about fifteen years, and during that period it does not appear that the validity of such statute, on the ground that it was contrary to the organic act, was ever questioned save here, but that all inferior courts, as well as the Supreme Court of that territory, assumed the validity of such statute.

Section 9 of the Organic Act of Washington Territory (Act of Congress, 2nd day of March, 1853, 10 U. S. St., p. 172, ch. 90) is substantially the same as that of Oklahoma Territory, and the Supreme Court of that territory recognized the validity of such a

statute without ever specifically passing thereon. *Suffern v. Chisolm*, 1 Wash. Ter. 506.

Section 9 of the Organic Act of the territory of Oklahoma (26 U. S. St., p. 81, ch. 182, approved May 2, 1890) provides:

"That the judicial power of said territory shall be vested in a Supreme Court, district courts, probate courts and justices of the peace. * * * The said supreme and district courts of said territory, and the respective judges thereof, shall and may grant writs of mandamus and *habeas corpus* in all cases authorized by law."

True, the Organic Act, as to enactments made by the territorial Legislature, was the paramount law of that territory, bearing the same relation to such legislation as the Constitution of a state does to enactments by the state Legislature. *Territory v. Hopkins*, 9 Okla. 133; *Allison v. Berger*, 1 Okla. 1.

Section 3307, Wilson's Rev. & Ann. St. 1903, provides:

"Judges of the district and probate courts shall within their respective districts and counties be authorized to hear and determine at chambers, motions to dissolve attachments and injunctions, and generally to exercise such supervisory control of the other officers and processes of their courts as to prevent abuses or oppression thereby and thereof."

It is insisted that this section is violative of section 9 of the Organic Act, *supra*, in that it confers judicial powers upon the judges at chambers when such power can only be exercised by the courts in term time.

Article 2, section 5, Const. Idaho (1889), provides:

"The judicial power of the state shall be vested in a court for the trial of impeachments, a Supreme Court, district courts, probate courts, courts of justices of the peace, and such other courts inferior to the Supreme Court as may be established by law for any incorporated city or town."

In that state, under a statute authorizing the dissolving of attachment by a judge at chambers, such power is exercised. *Mason, Ehrman & Co. v. Lieuallen*, 4 Idaho, 415, 39 Pac. 1117.

Section 1, article 6, Const. Mich. (1850), provides:

"The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. Municipal

courts of civil and criminal jurisdiction may be established by the Legislature in cities."

In *Genessee County Savings Bank v. Mich. Barge Co.*, 52 Mich. 165, it is said:

"The proceedings are taken under Comp. L., ch. 201 (How. St., ch. 275). They are judicial, and not according to the course of the common law. *Chandler v. Nash,* 5 Mich. 416. The statute requires the circuit judge or circuit court commissioner to hear the proofs and allegations of the parties, and if a good and legal cause for suing out the writ is not satisfactorily made to appear to the court upon such hearing, it is his duty to dissolve the attachment and order the property restored to the defendant. The affidavit of the plaintiff, his agent or attorney, is *prima facie* sufficient cause for issuing the writ; but upon the facts being denied in the petition for a dissolution, the burden is cast upon the plaintiff to make good the cause he alleges by other competent proof in addition to that contained in his affidavit for the writ. * * * So far as the original suit is concerned, the application to dissolve is entirely an interlocutory proceeding and does not touch or affect the merits thereof. * * * It is in the nature of a motion and may be disposed of at chambers. * * * A hearing, however, is required, and a trial of a question of fact must be had; and there is no reason why the rules governing the trial of such issues should not be applied by the court upon the hearing. Questions both of law and fact are to be adjudicated by him. *Chandler v. Hash, supra.*"

This opinion was delivered by Judge Sherwood, in which Judge Cooley concurred. To the same effect is *Rowe v. Kellogg et al.*, 54 Mich. 206.

Section 1, article 4, Const. S. C. (1868), provides:

"The judicial power of this state shall be vested in a Supreme Court, in two circuit courts, to wit: a court of common pleas, having civil jurisdiction, and a court of general sessions, with criminal jurisdiction only; in probate courts, and in justices of the peace. The general assembly may also establish such municipal and other inferior courts as may be deemed necessary."

In *Cureton v. Dargan,* 12 S. C. 122, it was held that "the circuit judge on motion upon notice, may dissolve an attachment at chambers."

2. The condition of the bond is that said J. H. Bash was to pay to the said William Howald all damages which he, the said William Howald, may sustain by reason of attachment, including reasonable attorneys' fees, if the order be wrongfully obtained. The petition in part alleges:

" * * * The defendant, J. H. Bash, * * * caused an order of attachment to be issued out of the office of the clerk of said district court, and caused the same to be delivered to the sheriff of said county and levied on the stock of goods owned by the plaintiff in said city of Hennessey, and caused the sheriff to take possession of said goods and remove them from the building in which they were kept by the plaintiff; * * * that by reason of the wrongful issuance and levy of the order of attachment in said cause the plaintiff has suffered damages, in this: that he has been compelled to pay out the following sums of money in procuring a dissolution of said attachment:

"Railroad fare from Hennessey to Enid, the residence of his attorneys $10.00; stenographer's fees for preparing of necessary affidavits for use in the hearing on the motion to dissolve the attachment, at Arapaho, $10.00; railroad fare of plaintiff and his attorneys from Enid to Arapaho and return, $20.00; for labor in taking an inventory of the goods after they were returned by the sheriff, and for cleaning and preparing the same for sale, $125.00; retainer paid to Manatt & Sturgis, plaintiff's attorneys, $75.00.

"That the plaintiff has been damaged in the further sum of $225.00, the balance of the attorney fee due plaintiff's attorneys, under and by virtue of his contract with them, * * * that he has been further damaged in the wrongful issuance and levy of said attachment, in the sum of $2,500.00 by reason of the depreciation in the value of said stock of goods while the same were in the possession of the sheriff. That said depreciation resulted from the fact that the goods, while in the possession of said sheriff, were kept in a place where the rain leaked into the building and caused said goods to be soaked with water; and where mice and other vermin got into them and cut and injured them.

"The plaintiff has been further injured by reason of the wrongful issuance and levy of said attachment, in the sum of $2,000.00 by reason of the unlawful and wrongful conversion of a portion of said property while in the possession of the sheriff.

"That the plaintiff has been further injured by reason of the

wrongful issuance and levy of said attachment in injury to his business; that at the time of the levy of said attachment, the daily sales of the plaintiff amounted to the sum of $200.00, and his daily profits amounted to the sum of $50.00; that at said time he had advertised, at a cost of $125.00, a special sale at his place of business, and that within four or five days after said sale had been commenced, said attachment was levied and all of the expense of advertising was lost by reason of said attachment, to his damage in the sum of $1,000.00.

"That no part of the damages has been paid by the plaintiff."

After the levy was made a deputy sheriff remained in charge of the attached goods, and at the time they were removed by the sheriff from the building in which they were levied on to an adjoining building the following conversation was testified to have taken place between defendant in error and said deputy:

"Q. At the time the goods were removed from the building, state what, if anything, was said between you and the officer with reference to that matter.

"A. Yes, sir; I had a conversation with him and told him— he told me he was going to move the goods out of there. I had a conversation with him and he told me that he was going to move the goods out of there into the next building, and I told him to just leave it in there; it would not cost him any more to leave it in there. The building was mine, paid for and everything, and if he took the goods, why he just as well leave the building closed; it did not make a particle of difference.

"Q. What did he say in that particular?

"A. He said he did not care what I said; he had his instructions; that I had a right to object if I wanted to, but that he did not care."

Exceptions were duly saved to the admission of all this evidence. Neither the obligor nor the sureties on the attachment bond were present. This action is against them and not the officer. Such conversation was clearly hearsay as to said parties and inadmissible. It was also calculated to prejudice the minds of the jury against them. We cannot say that such did not constitute such an error as did not operate to the prejudice of plaintiffs in error, and, for that reason, this cause is reversed with instructions to grant a new trial.

3.   Plaintiffs in error insist that damages cannot be recovered for attorney's fees until they have been actually paid.   This seems to be the rule in California.   *Elder v. Kulner,* 97 Cal. 490, 32 Pac. 563.   But it is neither supported by the best reason nor the weight of authority.   *Higgins et al. v. Mansfield,* 62 Ala. 258; *Shultz v. Morrison, etc.,* 60 Ky. (3 Met.) 99; *Doe, etc., v. Perkins,* 47 Ky. (S. B. Monroe) 108.

No authorities are cited to support the contentions as to the other questions raised.   As they may not arise on another trial, we do not pass on same.

No briefs have been filed by the defendant in error in support of the ruling of the lower court.   The pressure of the business of this court does not allow time to judges to brief cases on the part of litigants.   If the defendant in error is too poor to provide a printed brief in accordance with Rule 7 of this court, by mailing an application to the clerk of this court, asking permission to file typewritten briefs, showing service on the opposing party, said application, without more, would be considered, and if it appeared on the showing that he was too poor to furnish a printed brief, he would be permitted by order of this court to file typewritten briefs. This court has time and again announced this rule.   (*Leavitt v. Com. Nat. Bank,* 26 Okla. 164, 109 Pac. 71.)   There is no excuse for this case not being briefed on the part of the defendant in error, especially when the judgment recovered in his favor in the lower court is in the sum of $1,600.00.

The judgment of the lower court is reversed and remanded.

All the Justices concur.