GREAT WESTERN COAL & COKE CO. v. COFFMAN.

No. 4329.   Opinion Filed September 22, 1914.

(143 Pac. 30.)

1. **APPEAL AND ERROR** — Death of Mine Employee — Judgment Sustained.  Where, in a suit in damages for personal injury, plaintiff sought to recover upon the theory that the explosion, resulting in the death of her intestate, was caused by the failure of the defendant to comply with the statute (Rev. Laws 1910, secs. 3982 and 3975), and where defendant denied a violation of the statute and that such was the cause of the explosion, and defended upon the theory that the explosion was produced from other causes, and where the jury adopted plaintiff's theory, and where it is not claimed that the evidence was insufficient to take the case to the jury upon her theory, **held**, in the absence of a demurrer to the petition and error in the admission of testimony or in the instructions, the judgment must stand.

2. **MASTER AND SERVANT**—Injuries to Servant—Defense—Assumption of Risk—Compliance with Statute—Waiver.  Where the issue was whether or not the explosion was caused by reason of a violation of a statute by the master, and, if not, whether or not the servant had assumed the risk, it was not error for the court to refuse to charge that, in addition to the ordinary risks of the employment, the servant, if he knew and appreciated them, assumed such additional risks as arose from the negligence of the master.  This for the reason that the servant cannot, as against public policy, waive a compliance with the statute, and for the further reason that the plea of assumption of risk was not available as a defense.

3. **SAME** — Instructions — Evidence.  Where plaintiff sues, alleging that deceased was a coal digger, and upon the theory that, as such, defendant owed him the duty not to fire shots until after he had left the mine, and defendant defended upon the theory that he was a shot firer, and, as such, it was his duty to remain in the mine until after the shots were fired, but was guilty of contributory

negligence in failing to go to a certain place therein prepared by the master for his safety, it was not reversible error for the court to charge upon plaintiff's theory, in effect, that as to such digger it was the duty of defendant not to fire the shots "while the men were engaged in its actual employment and until they, including deceased, had departed from the mine," and upon defendant's theory that he was guilty of contributory negligence, if, as a shot firer, he failed to go to said place while the shots were being fired.

4.    SAME—Evidence—Admissibility.    Evidence complained of examined, and held to be admissible.

(Syllabus by the Court.)

*Error from District Court, Latimer County;*
*W. H. Brown, Judge.*

Action by Mrs. Ben Coffman against the Great Western Coal & Coke Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Gordon & McInnis,* for plaintiff in error.

*H. H. Smith,* for defendant in error.

TURNER, J. This is an action commenced by the widow of Ben Coffman, defendant in error, in the district court of Latimer county, against the Great Western Coal & Coke Company, plaintiff in error, W. P. Thomas, and Dan Hughes, but later dismissed as to the two latter, to recover damages for personal injury sustained by her husband which resulted in his death. Her amended petition, after alleging the corporate existence of defendant, that at the time of the injury complained of its business was that of mining coal in mine No. 2 in Latimer county, and that said Thomas and Hughes were its superintendent and mine boss, respectively, substantially states that at that time it was the duty of said Thomas, who was in control of the operation of said mine and charged with the duty of directing the details of its management, and of said Hughes, as mine boss, to inspect said mine at intervals and see that the duties imposed by law upon defendant were performed, to the end that said mine be made a safe place for said Coffman to work; that he, on March 31, 1910, was employed in said mine by defendant as a

coal digger; that on said day, while so employed and while preparing to leave the mine at about 2 o'clock in the morning, there was a shot fired therein which caused an explosion in the mine, resulting in his death. Plaintiff, *inter alia,* charges upon information and belief that the explosion was by reason of the negligence of the defendant in permitting poisonous, noxious, and inflammable gas in dangerous quantities to accumulate at the working places in said mine and large quantities of inflammable coal dust also there to accumulate, and in the main slope and at and near its face, and clog the air; that defendant negligently failed to remove or dampen said dust as required by law, and failed to provide, besides other proper appliances, by proper appliance a means of forcing through said mine fresh air in sufficient quantities to dilute, render harmless, and expel the gas and dust therefrom; that by reason of the negligence complained of said mine became and was an unsafe place in which to work, in consequence of which, she says, said coal dust became ignited and exploded said mine and killed her husband, to her damage, etc.

On October 16, 1911, defendant filed motion to require plaintiff to separately state and number her causes of action, and later a motion to strike, which were overruled, whereupon plaintiff amended her petition as stated. After defendant had filed an amended answer and an amendment thereto, in effect a general denial, a plea to the jurisdiction, contributory negligence, and assumption of risk, and plaintiff had replied, in effect a general denial, there was trial to a jury and verdict for plaintiff. After motion for new trial filed and overruled, defendant brings the case here. As there is no merit in the contention that the court erred in overruling the motions aforesaid, and it is not contended that the petition fails to state a cause of action, or that the evidence was insufficient to take the case to the jury on the question of master's negligence, we need only determine whether the court erred in admitting certain evidence or in instructing the jury as hereinafter set forth.

The theory of plaintiff was that defendant was negligent in permitting Coffman to work in the mine without wetting the accumulated coal dust, which had clogged the air, and in failing

to inspect the mine for gas, as required by law (Rev. Laws 1910, secs. 3982, 3975), and that such failure and consequent explosion was the proximate cause of the injury. Defendant defended on the theory that it had complied with the law in those respects and had furnished him a reasonably safe place to work, and that the explosion was caused by a "windy shot," igniting the coal dust produced and suspended in the air by a "follow shot"; that both were fired by Coffman and another, whom they plead were fellow shot firers; that they were negligent in preparing their shots, and also in failing to go to a place of safety at the time they were fired, and also that Coffman assumed the risk of the employment. The evidence reasonably tends to prove that, at the time he was killed, Coffman was in the employ of the defendant as a coal digger doing contract work, and, on the night he was killed, was working on the night shift with five other diggers in its mine No. 2, near Wilburton. The mine ran into the ground on a slope at an angle of some 37 degrees, and had an open mouth about five by eight feet. The length of the slope was about 1,800 feet, with twelve entries to the rooms, from which the coal was mined, on each side and some distance apart, beginning within a few feet of the mouth. These entries were designated as "first east," "first west," "second east," "second west," etc., and extended on alternate sides down the slope to within some 60 or 80 feet of the face, where they ended with the twelfth east, on which the work of opening it up had progressed some twenty feet at the time of the injury complained of. The coal was conveyed in cars from out these rooms onto a track running the length of the slope and there conveyed in a "trip," consisting of one or more cars coupled together with cable attached, and drawn to the top by steam power located outside and near the mouth of the mine. In every entry down to the twelfth there were abandoned rooms in which the coal dust was not sprinkled, but, with this exception, as far down as the tenth entries there seems to have been no dereliction of duty on behalf of defendant in this particular. From that point down, however, the record discloses, the dust was never sprinkled, but was permitted to accumulate in the rooms and entries, on the walls and timbers, along the slope,

and on the track to such an extent that it was ankle deep, and in places covered the ties. So flagrant, indeed, was the violation of the statute that a grievance committee of the miners, on some two or three occasions before the explosion, complained to the mine boss and warned him of the danger; but little, if any, heed was paid thereto, and nothing was done towards alleviating the condition by sprinkling, as required by law.

Thus matters stood when, about 6 o'clock on the evening of March 30th, the deceased entered the mine as one of the night shift, consisting, among others, of six diggers. The shift was engaged in sinking the slope and turning the twelfth east entry and driving the air course, and, in addition to being paid as a digger, the deceased was also hired as a shot firer, together with one Boyd, also on that shift. Before leaving the mine, and at about 2 o'clock in the morning of the next day, shots were set by the shot firers on the face of the slope, whereupon, it seems, after being lighted by the shot firers, all five of the shift in the mine attempted to leave the mine before the shots exploded, and were on the "trip" about opposite the tenth entry on their way out when the shots went off and the explosion occurred, killing all five of them. All being killed who were in the mine at the time, it was impossible for plaintiff to prove precisely the cause of it. Her theory was as stated, and as it is not contended that there was no evidence reasonably tending to prove it, and the jury accepted her theory and rejected the theory of defendant, as evidencd by the verdict in her favor, the first thing left for us to consider is the instructions of the court. If fairly instructed upon the issues joined, in the absence of the admission of improper and prejudicial evidence, the judgment must stand; otherwise not.

It is assigned that the court erred in refusing to instruct that:

"Ben Coffman assumed all the ordinary risks and hazards, if any, of his employment, and all the ordinary risks and hazards, if any, which by the exercise of ordinary care he could have known, and, in addition thereto, he assumed all the ordinary hazards and risks of his employment, if any, if he knew the dangerous condition and appreciated the risk and continued

at work in the presence of such dangers; and this is true, if the dangers were imminent, whether such dangers did or did not arise from the failure of the defendants, or any of them, to use that ordinary care for the reasonable safety of Ben Coffman which a reasonably prudent man would exercise for his own safety, and if the death of Ben Coffman was caused by any risk or hazard so assumed by him, the plaintiff cannot recover, and your verdict must be for the defendants."

Not so; this for the reason that, as this is an action to recover damages resulting from the violation of a statute (Rev. Laws 1910, sec 3982), the servant as a matter of law cannot waive a compliance by the master therewith and assume the risk of the master's negligence in failing to comply with the statute. Hence the doctrine of assumption of risk was not available as a defense. What we said as to a waiver of compliance with a statute in *San Bois Coal Co. v. Janeway,* 22 Okla. 425, 99 Pac. 153, is equally applicable here. There the court in the syllabus said:

"The purpose of Act Cong. July 1, 1902, c. 1356, 32 Stat. 631, requiring the owners or managers of every mine to provide an adequate amount of ventilation and proper appliances and machinery to force air through such mine to the face of each and every working place, so as to dilute and render harmless, and expel therefrom, the noxious and poisonous gases, was to protect the employees of such owners or managers from a well-known danger of their service, the risk from which, from the nature of their employment, they were compelled to assume; and, although an employee impliedly waives a compliance with the statute, and agrees to assume the risk from defective appliances by continuing in the service, a court will not recognize or enforce such an agreement. To permit owners or managers of mines to avail themselves of such an assumption of risk by its employees would be, in effect, to enable them to nullify a penal statute, and that is against public policy."

In *Poli v. Numa Block Coal Co.,* 142 Iowa, 104, 127 N. W. 1105, 33 L. R. A. (N. S.) 646, the court said:

"These statutes being to a great extent the product of comparatively recent legislation, it is only natural that the expressed views of the courts of different jurisdictions have not been entirely harmonious with respect to their operation and effect, but the decided weight of the precedents supports the

view we have above indicated that, where the negligence charged constitutes the violation of a statute enacted for the servant's benefit, the master cannot avail himself of the plea of assumption of risk against the consequences of his own wrong. The holdings to this effect are so numerous that to attempt an exhaustive citation would unduly extend this opinion. The leading cases in this class are collected in 26 Cyc. 1181, notes 61, Cyc's Annotations for 1910, p. 2533; 20 Am. & Eng. Ency. Law (2d Ed.) 121; *Hall v. West*, note, 14 Ann. Cas. 599; *Bromberg v. Evans*, note, 13 Ann. Cas. 36."

See, also, *Collins v. Star Paper Co.*, 143 Mo. App. 333, 127 S. W. 641.

After reading this entire record with the point in view, we cannot say there was no evidence reasonably tending to prove the presence of inflammable gas in this mine, and that, too, in dangerous quantities. For that reason the court did not err in refusing to tell the jury:

"* * * That in determining whether or not the defendants, or any of them, were negligent, you will leave out of consideration all allegations concerning the presence of inflammable gas in that mine."

Neither can we say that there was no evidence reasonably tending to prove that defendant failed to discharge its duty in testing for gas and hence the court erred in refusing to so instruct the jury. But why consider the instructions of the court, when the evidence clearly discloses, and the jury found, that the explosion resulted from the negligence of defendant in permitting coal dust to accumulate without wetting it down, in violation of the statute. When it is so apparent, as it is in this case, that the verdict of the jury was right, we will not weigh the rights of defendant in golden scales, but we are directed by statute to disregard all errors in the instructions which do not affect the substantial rights of defendant. After examining them all with great care, the only thing remaining to be said is upon one concerning contributory negligence and another concerning the measure of damages. As to the former there is no reversible error.

As to the latter the court instructed the jury (No. 26):

"If you find from the evidence in this case that the plaintiff is entitled to recover, you are instructed that the measure of damages shall be in this case the detriment which she has approximately sustained by reason of the injuries to and death of the said Ben Coffman, and in determining this detriment and damages to the plaintiff, if any, it will be your duty to take into consideration the age of the deceased, Ben Coffman, the number of years which he might have reasonably and probably have been expected to perform manual labor, at the time of his death, and his contribution to and support of the plaintiff in this case, and the infant children of the plaintiff, and all the circumstances and conditions surrounding their relations, and the likelihood or probability of the deceased to contribute to the maintenance and support of this plaintiff, but it is not to exceed the sum of $50,000. In this connection you are instructed that damages in this case must depend very much upon the facts and circumstances shown from the evidence, and that the law does not provide any fixed share of compensation, but the result must be left to turn upon the good sense and deliberate judgment of the jury to fix compensation for the injuries which you may find from the evidence have been inflicted by reason of the death of the deceased on the plaintiff, approximately caused by the negligence of the defendant, if any."

It is complained of this instruction that the same fails to limit the recovery of plaintiff to the pecuniary damages which she sustained as a result of the death of the intestate. Of course, if this is true, to give it was error. *Johnson County v. Carmen*, 71 Neb. 682, 99 N. W. 502; *James v. Richmond, etc., Ry. Co.*, 92 Ala. 231, 9 South. 335; *G., H. & S. A. Ry. Co. v. Worthy*, 87 Tex. 459, 29 S. W. 376. But, viewed in the light of the pleadings and proof, we think the instruction properly limits the recovery. The instruction starts out by telling the jury that, if they find from the evidence that plaintiff is entitled to recover, her measure of damages is the detriment which she has approximately sustained by reason of the death of the deceased; that in determining that fact it is their duty to take into consideration the age of the deceased, his expectancy of life, and his ability to contribute to the support of his wife and children, "and all the circumstances and conditions surrounding their relations"— which means so far as the evidence discloses. On this point all

that the evidence disclosed was that at the time of his death deceased left a wife and two children, that he was 28 years old, in good health, and performed manual labor regularly, that his earning capacity was $125 per month, and that during the four years of their married life they had accumulated about $500. "In this connection," the jury was further instructed that much depended upon the facts and circumstances as shown by the evidence and that the law did not provide for a fixed "compensation," but that the result should depend upon the good sense and deliberate judgment of the jury "to fix compensation for the injuries which you may find from the evidence have been inflicted, by reason of the death of deceased, on the plaintiff."

By instructing the jury "to fix compensation for the injuries you may find from the evidence have been inflicted by reason of the death of the deceased on the plaintiff," and in so doing to take into consideration the age of the deceased, "the number of years he might have reasonably and probably have been expected to perform manual labor, * * * and his contribution to the support of the plaintiff in this case and the infant children of the plaintiff," the idea was excluded from their minds that they might take into consideration anything else, and clearly confined her damages to the money value of the life of deceased. For the reason that the court thereby excluded the consideration of any other element of damage, and there was no evidence of, or recovery sought for, grief, mental suffering, or loss of society, it was not error to give said instruction, or to refuse to give instruction No. 11 requested by defendant, which reads:

"If you shall find for the plaintiff in this case, you will determine the amount of your verdict by the pecuniary loss which has been sustained by plaintiff and her beneficiaries by reason of the death of Ben Coffman, and you are not in fixing the amount of your verdict to take into consideration any grief, mental suffering, or loss of companionship or society on the part of the plaintiff by reason of such death."

But, assuming that the court in said instruction failed to limit the jury to assessment of pecuniary damages, as it is not claimed that the judgment for $7,500 in this case is excessive,

the error is harmless. 38 Cyc. 1814, lays down this rule and cites authorities in support of it from half the states in this Union. *C., R. I. & P. Ry. Co. v. Archer,* 46 Neb. 914, 65 N. W. 1043, was a suit in damages for personal injuries. Among the instructions given was this:

"If you find for the plaintiff, then, in estimating his damages, you are instructed that he is entitled to recover any pecuniary loss he has sustained on account of being unable to work, either wholly or in part. If he has suffered permanent injury that will prevent him from pursuing his ordinary business or labor in the future to the same extent that he did prior to the injury, that should be taken into account. He is also entitled to recover on account of bodily pain and suffering, and for expenses of his treatment, including physicians' charges. You should take all these elements into consideration, and allow him such sum as will be fair and just compensation for the injuries sustained; but you cannot allow him exemplary damages—that is, damages by way of punishment of the defendant."

Concerning which the court said:

"We agree with counsel for the railway company that to recover prospective damages it must be made to appear from the evidence with reasonable certainty that future evils will result; and we also agree with them in their contention that the record discloses no evidence of a permanent disability affecting plaintiff's ability to pursue his ordinary business in the future. It follows that the instruction just quoted, in so far as it submitted to the jury a consideration of a permanent disability affecting plaintiff's future business, was technically erroneous. The most difficult question in the case is whether the error was prejudicial. The verdict was for $1,500. Prior to the injury the plaintiff was a man of sound health, able to perform manual labor at remunerative wages. For four weeks, at least, he was confined to his bed. For several months thereafter he could only move with the aid of crutches. Down to the time of trial he experienced pain, and while for some time prior to the trial he had been working, he had been compelled to resort to a different class of work and procure assistance to relieve him of the severer tasks. At the time of the trial these conditions continued, and there was evidence tending to show that they might continue for two years. In *Omaha & R. V. R. R. Co. v. Brady,* 39 Neb. 27 [57 N. W. 767], the jury found a verdict for $7,000. This court held that there was

no sufficient evidence of a permanent disability resulting from the injuries complained of, but permitted a judgment of $2,000 to stand on plaintiff's remitting the remainder. The propriety in such cases, even where damages are unliquidated, of permitting the defendant in error to elect between a *remittitur* and a judgment of reversal, has not, so far as we know, ever been questioned in this state. If this verdict were for so large a sum that it was evident or even probable that a portion of the damages had been allowed on account of supposed permanent injuries, there would, therefore, be no doubt that the judgment should be of this character, the court estimating as the amount of the *remittitur* as great a sum as it was probable that the jury might have allowed on account of the element improperly submitted. But here we cannot pursue this course. In the Brady Case a judgment $500 greater than that here allowed was permitted to stand for temporary injuries, apparently no more serious than those disclosed in this case, and we would not feel warranted in requiring as a condition of affirmance a *remittitur* beyond a nominal sum. On the other hand, had the verdict been for $5 or $100, or even any sum not beyond what might be equal to what may be called the liquidated elements of damages proved, to wit, expenses occasioned by the injury and actual loss of earnings already sustained, we would unhesitatingly affirm the judgment unconditionally, as beyond all question not including anything for permanent disability. We think the true rule is that where the damages are unliquidated, and the jury has been by the instructions permitted to consider an element not sustained by the evidence, the error should be treated as harmless, where, from an inspection of the evidence and the verdict, it is reasonably certain that the jury was not misled, and that it allowed nothing on account of the elements improperly submitted to it. We think this case discloses a state of facts within the rule."

In *Toledo, etc., Ry. Co. v. Ferguson,* 134 Ill. App. 606, in the syllabus it is said:

"An instruction which fails to limit the jury to the evidence as the basis for the allowance of an attorney's fee, though erroneous, is not ground for reversal, where the amount allowed was reasonable and justified by the evidence."

In *Georgia R. & B. Co. v. Flowers,* 108 Ga. 795, 33 S. E. 874, the court said:

"Some of the instructions given in the present case concerning the annuity table and the method of using it were in-

accurate; but when the amount of the verdict, viewed in the light of all the testimony, is considered, it is manifest that the error committed in this respect could not have resulted injuriously to the defendant, and therefore it affords no ground for setting aside the verdict, which was well warranted by the evidence."

In *Suttle v. Brown,* 137 Ill. App. 438, in the syllabus it is said:

"Errors in ruling upon instructions will not reverse, where it appears that such errors refer solely to the question of damages, and the damages awarded were amply sustained by the evidence."

In *Baltimore & Ohio Ry. Co. v. Pumphrey,* 59 Md. 390, in the syllabus it is said:

"Where it is apparent from their verdict that the jury did not take into consideration, in assessing the damages, any injury done to the business of the plaintiff, the erroneous granting of an instruction authorizing them to include such injury in their estimate of damages will be no ground for disturbing the verdict."

In *Inland Steel Co. v. Ilke* (Ind.) 103 N. E. 7, it is said:

"Under Burns' Ann. St. 1908, sec. 700, providing that no judgment shall be reversed where it appears that the merits of the case have been fairly tried and determined below, a judgment in a personal injury action by a servant, who counted on a violation of the factory act, will not be reversed because the trial court improperly instructed on the master's criminal responsibility, where the verdict was not excessive, and the violation of the act was the proximate cause of the injury.

"Where an instruction in a personal injury action, relating to future pain and suffering, was erroneous, it will be considered harmless, where the verdict was not excessive."

In *Carroll v. Centralia Water Co.,* 5 Wash. 613, 32 Pac. 609, 33 Pac. 431, it is held:

"Although the instructions of the court may be erroneous, yet where the verdict is unmistakably in accordance with the evidence and consonant with justice, the judgment thereon ought not to be disturbed."

See, also, *Pettis v. Brewster,* 94 Ga. 527, 19 S. E. 755; *Cleveland, etc., Ry. Co. v. Newell,* 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; *Flanagan v. B. & O. R. Co.,* 83 Iowa, 639, 50 N. W.

60; *Lee et al. v. Mo. Pac. Ry. Co.*, 195 Mo. 400, 92 S. W. 614; *Weick v. Dougherty*, 139 Ky. 528, 90 S. W. 966, 3 L. R. A. (N. S.) 348; *Finucane v. Ill. Cent. R. Co.*, 169 Ill. App. 175.

We are therefore of opinion that said instruction contains no reversible error.

And although instruction No. 9 starts out to instruct on assumption of risk, concerning which we need not further speak, and closes with an instruction on contributory negligence, which fairly states the law, we cannot say it is misleading. For the reason that plaintiff sues, alleging deceased to be a digger only, and upon the theory that, as such, defendant owed him the duty not to fire shots until after he had left the mine (Rev. Laws 1910, sec. 3994), and defendant defended upon the theory that, being a shot firer, it was his duty to be in the mine at that time, but was guilty of contributory negligence in failing to go to a certain place therein provided for his safety, it was not reversible error for the court to charge, as it did, substantially, on plaintiff's theory, in effect that as such digger it was the duty of the defendant not to fire shots "while the men were engaged in its actual employment, and until they, including deceased, had departed from the mine," and upon defendant's theory, as he did, substantially, that he was guilty of contributory negligence, if as a shot firer he failed to go to said place of safety while the shots were being fired.

There is no error in the admission of evidence in effect that defendant furnished, by selling to the miners employed in its mine, the dynamite used by them in shot firing, pursuant to a working contract in writing existing between defendant and the United Mine Workers, rule 7 of which reads, "All dynamite, like powder, must be purchased from the company only," and that prior to this explosion defendant had pursuant thereto furnished frozen dynamite, and that frozen dynamite would cause a "windy shot." This for the reason that as defendant defended upon the theory that deceased was guilty of contributory negligence in preparing his shots, and that his negligence caused a "windy shot," it was competent for plaintiff to show in rebuttal that such shot was not the result of the negligence of deceased

in preparing the shot, but was the result of the use of frozen dynamite furnished by defendant and used by deceased in firing the shot. In *Inland Steel Co. v. Ilke, supra,* the court said:

"If an issue of fact is raised by competent evidence, it should be submitted to the jury, regardless of which party introduced it, or what his purpose was in offering it."

As there is no merit in the remaining assignments, the judgment of the trial court is affirmed.

All the Justices concur.