**CHICAGO, R. I. & P. Ry. CO. v. HASKELL.**

No. 16251—Opinion Filed April 13, 1926.

1. **Carriers—Negligent Delay in Transporting Cattle—Question for Jury—Evidence as to Reasonable Time.**

In an action against a common carrier to recover damages for the negligent delay in the transportation of cattle from a point in this state to their destination in another state, witnesses who from past experience are familiar with such transportation may properly testify as to the usual and customary time required to make such shipments, and from this testimony and other competent testimony in the case it is the province of the jury to determine whether or not the time actually taken by the carrier for the transportation of the cattle alleged to have been negligently delayed was reasonable or unreasonable.

2. **Same.**

In such an action, the question as to what is a reasonable time for the transportation of the cattle and as to the reasonableness and sufficiency of the excuse which the carrier makes for its delay, is for the determination by the jury, under proper instructions from the court.

3. **Same—Witnesses Qualified to Testify as to Loss of Weight and Decrease in Market Price.**

Where damages are claimed from a common carrier on account of weight unnecessarily lost by cattle in transit and on account of a decrease in the market value of the cattle when they reached their destination, occasioned by the negligent delay of the carrier in transporting the shipment, witnesses experienced in such matters may properly testify as to the loss of weight of the cattle and as to the decrease of the market value of the cattle on account of such loss of weight while in transit.

4. **Same—Prima Facie Case of Negligent Delay—Defensive Evidence That Train Schedules Prevented Delivery in Reasonable Time.**

Where, in a common-law action to recover damages for the breach of a shipping contract, whereby defendant undertook to transport certain cattle within a reasonable time, the evidence reasonably tends to show that defendant breached its contract by failing so to do, the same is sufficient to take the question of negligence to the jury, and the presumption of negligence is not explained or rebutted by positive evidence on behalf of the defendant that the regular schedule of its stock trains would not enable it to deliver the cattle within a reasonable time. St. Louis & S. F. R. Co. v. Shepard, 40 Okla. 589, 139 Pac. 833, 240 U. S. 240.

5. **Same—Sufficiency of Instructions.**

Record examined, and held, that the instructions given by the court to the jury fairly stated the law applicable to the case, and that the court committed no error in refusing to give the instructions requested by the defendant.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Caddo County; Will Linn, Judge.

Action by B. E. Haskell, against the Chicago, Rock Island & Pacific Railway Company, for damages. Judgment for plaintiff and defendant brings error. Affirmed on condition.

W. F. Collins, W. R. Bleakmore, John Barry, and A. T. Boys, for plaintiff in error.

Pruett & Wamsley, for defendant in error.

Opinion by THOMPSON, C. This action was commenced in the district court of Caddo county, Okla., by B. E. Haskell, defendant in error, plaintiff below, against the Chicago, Rock Island & Pacific Railway Company, plaintiff in error, defendant below, to recover damages in the sum of $522.22, claimed for delay in the shipment of 99 head of cattle, from Oklahoma City to Kansas City, and for shrinkage in the weight of said cattle. The parties will be referred to as plaintiff and defendant, as they appeared in the lower court.

The plaintiff's petition, among other things, alleges that on the 29th day of January, 1923, the plaintiff, under contract, shipped 99 head of cattle from Anadarko, Okla., to Oklahoma City, with Kansas City privilege, said cattle to be delivered to the plaintiff within a reasonable time after receipt thereof; that the cattle were of the value of $5,000; that the defendant received said cattle and delivered the same at Oklahoma City, and the plaintiff, not being satisfied with the market. on the 29th day of January, exercised his Kansas City privilege and elected to have the cattle shipped from Oklahoma City to Kansas City, Mo., and the cattle were reloaded at Oklahoma City on Monday, the 29th day of January, 1923, at the hour of 4:40 p. m., and at the time of said reloading the plaintiff signed a separate written waiver of the 28 hour law, and extended the same to 36 hours, so that the cattle would not be subject to unloading, rest, water, and feeding for that period of time; that it was the duty of defendant to transport said cattle from Oklahoma City to Kansas City within a reasonable time, and in the customary time required for said transportation; that the usual and ordinary time for such transportation was 30 hours; that defendant failed to transport said cattle within the time pursuant to the agreement, but unreasonably and negligently delayed said cattle and did not deliver the same at Kansas City until Thursday, the 1st day of February, 1923, which plaintiff claimed, was in violation of the duty of the defendant,

under said contracts, which caused damage to plaintiff by shrinkage in weight and loss in flesh of 40 pounds per head for each animal, and upon this account claimed damages in the sum of $244.33; that the difference in the market value of said cattle at the time they should have been delivered at Kansas City, Mo., was 35 cents per hundredweight, and claimed damages for loss on account of the decrease in the market between the date they should have been delivered and the date they were delivered and sold by him in the sum of $264.37, and also claimed the sum of $13.50 for extra feed. Copies of the written contracts were attached to the petition as exhibits.

Defendant company answered by way of general denial, admitting only its corporate existence, and that it was engaged in the business of a common carrier. The cause proceeded to trial before the court and jury, and at the close of the evidence on part of plaintiff, defendant filed its demurrer to the evidence, which was overruled and exception reserved thereto by defendant. The defendant then introduced its evidence and rested; plaintiff introduced rebuttal testimony, and the cause was submitted to the jury under instructions of the court, and the jury returned its verdict in favor of the plaintiff in the total sum of $400.05, in the following items: $264.39, decline in market; $13.50, feed bill at Herington; $122.16 excess shrinkage. Motion for new trial was presented, heard, and overruled, and defendant reserved its exceptions, and the court pronounced judgment on the verdict of the jury in the sum of $400.05, and costs.

Attorneys for defendant set up in their petition in error eight grounds of error, but submit their argument in their brief on two propositions, which are as follows:

"(1) The court erred in admitting incompetent, irrelevant, and hearsay evidence, and overruling defendant's demurrer to the evidence.

"(2) The judgment is contrary to law and the evidence, and the court erred in refusing to give defendant's requested instruction No. 1, and in giving instructions Nos. 5 and 6."

The first matter to be disposed of in this opinion is the objection to the admission of certain testimony complained of by attorneys for defendant in their brief. They complain that the plaintiff, B. E. Haskell, was permitted to testify over their objection as to a shipment made by him in 1921. The testimony complained of is not set out in the brief in strict conformity with rule 26 of this court, but upon examination of the record,

he testified that he made a shipment sometime in 1921, loading at Anadarko at six o'clock Saturday evening, and arrived in Kansas City and was unloaded and sold on the market Monday; that he did not accompany this shipment, but he testified that he knew they arrived and were sold on Monday's market, by return of sale received by him, which showed they went on Monday's market. The attorneys for defendant contend that the matter of arrival for the market on Monday was hearsay, and that the admission thereof was therefore prejudicial to the rights of the defendant. We cannot agree with this contention. The admission of this testimony does not come within the rule laid down in the case of Bash et al. v. Howard, 27 Okla. 462, 112 Pac. 1125, or the case of C., R. I. & P. Ry. Co. v. Boring-Kim Pro. Co., 57 Okla. 495, 157 Pac. 351, where in the first-mentioned case, it was held that the testimony admitted "was liable to inflame the minds of the jury and prejudice them against the losing party." The witness knew from his receipt of returns of sales that his cattle reached their destination and were sold on Monday's market, and it was not therefore hearsay.

Attorneys for defendant further complain of the testimony of O. J. Laughlin in rebuttal for plaintiff, where he testified that train No. 96 left Herington, Kan., between six and seven in the evening, and arrived at Kansas City between three and four the next morning, in time for the market that day, on the grounds that his evidence conveyed the impression that plaintiff was entitled to have his cattle moved on that train within the 36 hour limit. We do not think that the admission of this evidence was sufficient to justify a reversal of this cause, for the reason that it appears from the evidence that the matter in controversy was the question of reasonable time for the shipment of cattle from Oklahoma City to Kansas City, and this testimony was admissible to show the time required to make the shipment testified about, and to be taken into consideration by the court and jury as to what would be a reasonable time for the transportation of cattle on a regular stock train from this section of the country to Kansas City, and there is reference in the testimony that this was the train running either as train No. 96, or train running on the time of train 96 from El Reno. It is further urged that the admission of the testimony of H. B. Dorset, who was the sole owner of the M., K. & T. Commission Company and head cattle salesman for this company, said company being the commission company that received the cattle for sale at Kansas City, was prejudicial to the rights of the defendant, where he was allowed to testify that the condition of the weather at the time the cattle arrived in Kansas City was cloudy, cold, and chilly, and where he was permitted to further testify as to the amount of shrinkage of the cattle as being not less than 40 pounds per head, where he used the words, " Well, I would guess that these cattle would shrink not less than 40 pounds per head." The above quoted testimony, if taken as standing alone, would be open to the objection urged, but upon examination of the testimony of this witness, we find that before he made the answer, above quoted, he had said that he knew the condition of the cattle upon their arrival, had examined them, and that they were very tired and looked as if they had been on the train for sometime, their hair looked as though it had been sweated and then chilled off after being unloaded, and that their condition showed they had shrunk quite a bit; that it was almost impossible to keep them up while they were being shown to the buyers, and they would lie down as soon as the buyer would go out of the pens; that the longer cattle are kept in cars, the heavier the shrinkage, and that cattle in transit 50 or 60 hours makes a long haul, and after making this preliminary statement and testifying that he had been in the commission business 25 years for the commission company, he testified as above quoted, and while it is true that he used the words, "I would guess," it is evident from the context of this witness' testimony that he was giving this as his judgment, based on his experience as a cattleman and his observation of the cattle, and it comes clearly within the rule of this court laid down in the case of Midland Valley R. Co. v. Adkins, 36 Okla. 15, 127 Pac. 867, where this court said:

"Where a witness testified as to his experience in the cattle business, and qualified as an expert as to weights, his testimony as to weights was admissible, though he stated he 'guessed' they weighed a certain amount, where his testimony, considered together, showed that he was giving his judgment based on his experience as a cattleman and his observation of the cattle."

While it is true that there is no predicate laid for the plaintiff for recovery on account of the condition of the weather, we do not think the admission of the statement complained of in regard to the weather is of such importance as to cause a reversal of the judgment in this case. All of the decisions and the statute law of this state

are to the effect that the trial court has a large discretion to be exercised in the admission or rejection of testimony, and a case will not be reversed unless in the opinion of the court, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. We cannot say that the admission of the testimony complained of by the trial court comes within the rule that the defendant has been deprived of any constitutional or statutory right, or that there has been any miscarriage of justice in this respect.

As to the other ground set up in the first assignment of error presented in briefs of counsel for defendant, that the court erred in overruling defendant's demurrer to the evidence, we are clearly of the opinion that there was sufficient evidence in the case to justify the court in overruling this demurrer on the authority of the first paragraph of the case of Meyer et al. v. White, 27 Okla. 400, 112 Pac. 1005, and also the case of Wails et al. v. Farrington, 27 Okla. 754, 116 Pac. 428, where, in the body of the opinion, the case of Meyer v. White, supra, is cited with approval and the cases of Dickinson v. Seay, 71 Okla. 66, 175 Pac. 216; C. R. I. & P. Ry. Co. v. Simmons, 100 Okla. 164, 228 Pac. 983; St. Louis-San Francisco Ry. Co. v. May, 110 Okla. 170, 236 Pac. 888. Upon the whole record and the evidence, which will be reviewed fully in the discussion in this opinion of the second assignment of error, we are clearly of the opinion that it would have been an invasion of the province of the jury to have sustained the demurrer and taken the case from the jury.

It is next contended that the judgment is contrary to the law and the evidence, and it will be necessary to review the evidence in this case. It is agreed that the cattle were loaded under the ordinary contract for shipment, with a release of the 28 hour law, and that the cattle were loaded at the stockyards in Oklahoma City at 4:40 p. m., on Monday, January 29th, and delivered at the stockyards in Kansas City at 12:20 a. m., Thursday, February 1st, covering a period of 55 hours and 40 minutes. Witnesses on part of the plaintiff embraced one of the large shippers, who had shipped over 100 cars a year for several years, down to shippers who only shipped a few carloads, and they testified covering a period of several years down to and including July and September of 1922, that their shipments loaded at Oklahoma City and other points as far, or farther, away from Kansas City than Oklahoma City, reached the market from 30 to 36 hours from the time of shipment. One witness, Tom Boles, stated that he had shipped 100 cars a year 1or 16 years, the last shipment being in September, 1922, and that of all the cars that he had shipped, all except two had arrived for the market of the second day after the shipment, and within 36 hours from the time received, and that only two shipments of the whole number had been laid over in Herington, Kan., for feed and rest. Several of the witnesses testified that their cattle had been loaded at Ft. Cobb, Washita, Pocasset, Geary, Chickasha, Anadarko, Apache, and Lawton; that they were shipped over defendant's line of railroad; that they were loaded on Saturday evening and arrived in Kansas City for Monday morning's market. This testimony covered a period of several years. Nearly all of these towns mentioned are as far, or farther, from Kansas City than Oklahoma City is. It is urged that the testimony of these witnesses is too remote in time from the date of the shipment here complained of, but the Act of Congress, providing for unloading and rest after 28 hours' confinement on the train, unless a 36 hour waiver is signed, has been in existence since June 29, 1906, and the conditions, rules, and regulations of the road have been practically the same as to the running of the trains, except that it is shown by the record that there is now a double track a portion of the way between Herington, Kan., and Kansas City, and faster time can now be made over the road than at the times testified to by some of the witnesses. There was no extraordinary condition urged or presented by the defendant company that would have retarded this shipment, but they relied almost exclusively upon the schedule of stock trains introduced, showing the time of the running of the stock trains' run from Oklahoma City to Kansas City, covering a period from November 6, 1922, to March 30, 1923, showing the average time used in running those stock trains from Oklahoma City to Kansas City to be about 55 to 65 hours, but, according to the testimony of their own dispatcher and other officers of the company, the running time and the rest for feed at Herington included would only take 45 hours and 55 minutes, whereas this shipment took ten hours longer and they only had about six hours' rest. E. H. Donnally, the chief witness for the defendant company, who is the chief dispatcher for the defendant company at Herington, Kan., after giving the

running time and including nine hours' delay for rest, feed and loading at Herington, said that 45 hours and 55 minutes was fair running time between Oklahoma City and Kansas City. An examination of the testimony of some of the witnesses shows that these cattle could have been put into Kansas City within 30 to 36 hours; that this shipment was late, according to the defendant's schedule, out of El Reno; that it was late into Herington; that it was delayed in Herington nine hours, five hours of which, of course, was for feeding and rest, to which must be added some time for unloading and reloading, and that they were 14 hours and 40 minutes in making the run from Herington to Kansas City, when the evidence of the dispatcher and officers of the defendant company is to the effect that this road was in better condition at the time of this shipment than thereto.ore, and that the run should be made in a period of time varying from eight to ten hours. some of them putting it as high as eleven hours, and. under this state of facts, we are clearly of the opinion that there was an abundance of competent evidence in this case to sustain the verdict of the jury, especially upon the authority of the case of Dickinson et al. v. Seay, supra, which is practically on all fours with the instant case, except the shipment was from Ryan, Okla., to Oklahoma City, and from Oklahoma City to Kansas City, Mo., by way of El Reno, and that it took a longer period of time from Oklahoma City to Kansas City for that shipment, bu· this court held, in the first paragraph of the syllabus, that witnesses could testify from past experience as to the usual and customary time required to make the shipments, and that the question as to what is a reasonable time for the transportation of cattle from Oklahoma City to Kansas City was a matter to be determined by the jury, under proper instructions by the court, and where there was some evidence that the carrier failed to transport the cattle within a reasonable time, that it was sufficient to take the evidence to the jury, and that the presumption of negligence is not explained or rebutted by positive evidence on part of the carrier that the regular schedule of its stock trains would not enable it to deliver the cattle at their destination within a reasonable time. St. L. & S. F. Ry. Co. v. Shepard, 40 Okla. 589, 139 Pac. 833, affirmed 240 U. S. 240; Buel, Pryor & Daniel v. St. L. & S. F. R. Co.. 65 Okla. 108, 163 Pac. 536. To the same effect is the recent case of C., R. I. & P. Ry. Co. v. Simmons, supra, in which this court held that:

"The question as to what is a reasonable time for the transportation of cattle and as to the reasonableness and sufficiency of the excuse, which the carrier makes for its delay, and for the manner in which it handled the cattle, then become questions for the determination by the jury under proper instructions from the court."

This is a case where the evidence reasonably tends to show that the carrier failed to transport the cattle within a reasonable time.

The case of St. L. & S. F. R. Co. v. May, 110 Okla. 170, 236 Pac. 888, is also in point upon the questions presented in the last assignment of error.

Whatever may be the decisions of courts in other jurisdictions, it seems to be the well-settled law in this jurisdiction. from the authorities heretofore cited, that witnesses may testify from past experience, being familiar with the transportation of live stock. as to what is the usual and customary time required to make such shipments from the point of receipt to the point of destination, and that when witnesses have so testified, then it is within the province of the jury to determine whether or not the actual time taken by the carrier for the transportation of the carrier in the given case was reasonable or unreasonable. and measuring the evidence in this case by the settled rule above referred to, we are of the opinion that the evidence in this case was properly admitted and that it is sufficient to carry the case to the jury, and their verdict is, therefore. binding upon this court upon this question of fact.

This court, in an unbroken line of decisions, has held that where there is any evidence tending to support the verdict of the jury it will not be disturbed by this court on appeal.

We are of the opinion that the evidence, though in conflict in many respects, is sufficient to sustain the verdict of the jury and the judgment of the court pronounced thereon, if there is no error in the instruction of the court to the jury.

The only instruction offered by defendant has been disposed of in the reasoning given, sustaining the lower court in overruling the demurrer to the evidence at the close of the testimony on part of the plaintiff, and as to the sufficiency of the evidence, and will not be given further consideration.

Instructions Nos. 5 and 6, given by the court to the jury, complained of by attorneys for defendant, have been thoroughly examined by us in the light of the evidence and

decisions of the court applicable to the questions herein involved, and we are of the opinion, under the facts and circumstances of this case, that the instructions complained of fairly stated the law, and upon the whole case, after a careful examination of the briefs, the records of the case, and the issues herein involved, we are of the opinion that the judgment of the lower court was correct in all respects except that, under the evidence, the finding of the jury that plaintiff was entitled to recover $264.39 for decline in the market was excessive, and that plaintiff was only entitled to recover at most on this item the sum of $188.85, and we, therefore, find that the plaintiff should file a remittitur of $75.54, and that the judgment of the trial court should be for only $324.51, and upon filing said remittitur that the judgment of the lower court should be affirmed, otherwise it should be reversed and remanded for new trial.

By the Court: It is so ordered.

· Note.—See under (1) 10 C. J. p. 303 § 435; p. 305 § 440; 4 R. C. L. p. 596. (2) 10 C. J. pp. 305, 306, § 440. (3) 10 C. J. 304 § 438. (4) 10 C. J. p. 295 § 419; p. 304 § 439; p. 305 § 440. (5) 10 C. J. p. 306 § 441.