## KURN et al. v. WESTHEIMER & DAUBE.

No. 27452. Sept. 28, 1937.

Rehearing Denied Nov. 30, 1937.

J. W. Jamison, Cruce, Satterfield & Grigsby, and W. T. Stratton, for plaintiffs in error.

Sigler & Jackson, Joe B. Thompson, and Paul Sutton, for defendants in error.

GIBSON, J. The defendants in error, two cattlemen, brought this action against the plaintiffs in error, as trustees of the St. Louis-San Francisco Railway Company, for damages alleged to have been caused to cattle shipped over the railroad to Oklahoma City. The cattlemen allege that the railroad unnecessarily and negligently delayed loading the cattle, overcrowded the pens during the waiting period, and went farther and took longer in transit than necessary. As a consequence, it is asserted, the cattle lost much more in weight than if handled and shipped in ordinary course. The cattle were shipped to Oklahoma City to be prepared for market.

The evidence of the shippers, although disputed, was ample to support the charges .of unnecessary delay and improper handling, and the consequent loss in weight of the cattle.. But the evidence is challenged as being insufficient to show the resulting pecuniary damage. It is contended that because the evidence showed that it was not the intention of the shippers to sell the cattle, immediately, but to feed them for a period of time at Oklahoma City, the measure of damages would be the expense of reproducing the weight lost. The case of Colson v. Midland Valley R. R. Co., 113

Kan. 667, 215 P. 1004, is cited for this rule. But that measure, if sound, is not the one prevailing in Oklahoma. This court has held:

"The damage to livestock for delay in shipment is the difference between the market value of livestock in the condition they were when delivered at destination and the market value in the condition they would have been in if the delay had not occurred." Davis v. Kelly, 96 Okla. 17, 219 P. 923; C., R. I. & P. Ry. Co. v. Haskell, 117 Okla. 185, 245 P. 858; Dickinson v. Seay, 71 Okla. 66, 175 P. 216.

Under the foregoing rule, it is immaterial whether the cattle were to be sold immediately or kept for fattening. We therefore next inquire whether there was sufficient evidence of the damage under the market value rule.

Witness Jude Kingsberry testified that he was an experienced cattleman and that he "figured" the damage to the cattle would be around 50 pounds per head, which would be worth $5 per head. The objection made to this testimony was based on the ground that this was not the proper measure of damages, "these were not market cattle." Evidently counsel believed this testimony was establishing some sort of market value loss. There was no objection to the question and answer of the witness that in his opinion such treatment would damage the cattle around $5 per head.

Witness Tom Cardwell, manager for the plaintiffs, testified that he had been in the cattle business for 20 years, handling thousands of cattle a year, and that the value of the damage to the cattle per head would be a $5 depreciation in value. On cross-examination he was asked how he arrived at the $5 basis, and replied that the treatment they received would cause them to lose 50 cents a hundred, that he was figuring that on the basis as if he were going to sell them at that time. Then, on further cross-examination, he was asked: 'Let me know * * * how you arrive at five dollars per head." And answered: "If they had went to the market, at the market price at that time, the packer or buyer would have deducted at least 50 cents a hundred." From this it clearly appears that the witness was giving the difference between the market value as it would have been if the cattle were sold after normal treatment and as it would have been if sold after receiving the treatment accorded

them. It further appears from the further cross-examination of this witness that counsel was pursuing the theory that the cost of reproducing the weight lost was the proper measure of damages.

A third witness, Joe Kirk, testified that the approximate damage per head to the cattle by reason of the treatment received would be around $5 per head. The only objection made was as to the form of the question asked.

This testimony appears to be in accord with that permitted in the cases cited supra.

"Where damages are claimed from a common carrier on account of weight unnecessarily lost by cattle in transit, and on account of a decrease in the market value of the cattle when they reach their destination, occasioned by the negligent delay of the carrier in transporting the shipment, witnesses experienced in such matters may properly testify as to the loss of the weight of the cattle, and as to the decrease of the market value of the cattle on account of such loss of weight." Dickinson v. Seay, supra; C., R. I. & P. Ry. Co. v. Haskell, supra.

In the absence of proper objections this testimony is sufficient to give the jury a basis for awarding damages. The weight of the cattle, as well as the number of cattle shipped, was admitted in the pleadings, so that at either on the decreased value per hundredweight basis or on the decreased value per head basis the jury had evidence from which to arrive at the monetary loss.

It is, however, contended that the evidence of the three witnesses referred to above was incompetent on the question of damages. The record shows, however, that to a question asked the witness Kingsberry the objection was only: "We object to this estimation." The objection was not preserved to other questions and answers. Similarly, the objection to Tom Cardwell's testimony is to only one question. Further answers to the same effect were given by him without objection, and the railroad trustees' attorneys brought out on cross-examination the basis upon which Mr. Cardwell relied for his judgment as to the loss in weight and the amount of the decreased market value. The objection to one question propounded to the witness Joe Kirk went only to the form of the question. This was insufficient to raise the issue now contended for. In view of these facts we hold that the admission of similar evidence

without objection, the eliciting of the evidence to the same effect on cross-examination and the failure to make the proper objection, preclude the railroad's trustees from urging this alleged error in the admission of evidence.

Further contention is made that the judgment is contrary to the court's instructions. The court instructed the jury, in substance, that the measure of damages would be the extra expense in restoring the cattle to their former condition. This was erroneous, as we have seen, but it is substantially the rule the plaintiffs in error contend for here. No exception was taken by either side to one of the instructions containing this rule for measuring the damages. Plaintiffs in error do not contend that they requested an instruction on the correct measure as here-is defined. The testimony of the shippers' witnesses fixed the loss at $5 per head. The jury's verdict is equivalent of $4 per head, thus favoring the carrier. We find no substantial error properly preserved.

An erroneous instruction on the measure of damages, therefore, in circumstances such as here, does not constitute reversible error. Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 P. 30; Commercial Investment Trust v. Ferguson, 96 Okla. 163, 220 P. 925.

The judgment is accordingly affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, and DAVISON, JJ., concur.