GREAT WESTERN COAL & COKE CO. v. CUNNINGHAM.

No. 4351.   Opinion Filed September 22, 1914.

(143 Pac. 27.)

1. **APPEAL AND ERROR**—Master and Servant—Injury to Servant—Assumption of Risk—Harmless Error—Instructions.   Where the issues were whether or not the explosion was caused by reason of a violation of the statute by the master, and, if so, whether or not the servant assumed the risk, it is immaterial whether the court gave conflicting instructions upon the doctrine of assumption of risks, as the plea of assumption of risks is a bad plea, and is not available as a defense.

2. **MASTER AND SERVANT**—Injury to Servant—Contributory Negligence—Knowledge of Danger.   In charging upon contributory negligence, it is no error for the court to instruct the jury that knowledge of the danger confronting deceased, at the time he was injured, was an essential factor for the consideration of the jury.

3. **TRIAL**—Instructions—Applicability to Evidence.   Where there is no evidence reasonably tending to prove that the deceased, knowing that shots were about to be fired, had at his command an opportunity to leave the mine before the shots were fired, it was not error for the court to refuse to give an instruction predicated upon that theory.

4. **MASTER AND SERVANT**—Injury to Servant—Instructions—Issues.   Where upon proper cross-examination of defendant's witnesses, evidence developed tending to prove that the shot firers, in the preparation of and in firing their shots, were negligent, and that such negligence ignited the coal dust allowed by the master to accumulate in the mine in violation of the statute (Rev. Laws 1910, secs. 3975, 3982), and caused the explosion which killed the deceased, held, that it was not so far without the issues as to

Vol. 43—14

constitute reversible error for the court to charge the jury, in effect, that negligence of a fellow servant, if they found him to be negligent in that particular, was the negligence of the master, and in refusing to charge that they disregard any possible negligence on the part of the shot firers.

5. **SAME—Injury to Servant—Evidence of Condition.** Evidence as to the condition of the mine as to gas prior to the explosion, examined, and held not to be so remote from the time of the explosion as that its admission constituted reversible error.

6. **NEGLIGENCE—Evidence of Condition—Admissibility.** Evidence of the condition of the place where the injury occurred, a reasonable time before the occurrence, is admissible as tending to show its condition at the time of the occurrence, especially where it is further shown that those conditions have not since changed.

(Syllabus by the Court.)

*Error from District Court, Latimer County;*
*W. H. Brown, Judge.*

Action by Mrs. Della Cunningham against the Great Western Coal & Coke Company, a corporation, and others, for death of plaintiff's husband. Judgment for plaintiff, and defendant named brings error. Affirmed.

*Gordon & McInnis,* for plaintiff in error.

*H. H. Smith* and *C. R. Hunt,* for defendant in error.

TURNER, J. On August 26, 1910, Della Cunningham, in the district court of Latimer county, sued the Great Western Coal & Coke Company, W. P. Thomas, and Dan Hughes in damages for the negligent killing of her husband, who met his death in the same explosion mentioned in the Coffman case, *ante,* 143 Pac. 30, against this same defendant. Later she dismissed the suit against Thomas and Hughes. On October 16, 1911, she amended her petition, which, together with her amendment thereto, after alleging the corporate existence of defendant, that at the time of the injury complained of its business was that of mining coal in mine No. 2 in Latimer county, and that said Thomas and Hughes were superintendent and mine boss, respectively, substantially states that at that time it was the duty of said Thomas, who was in control of the operation of said mine and charged with the duty of directing the details of its management, and said Hughes, as mine boss, to inspect

the mine at intervals and see that the duties imposed by law upon defendant were performed, to the end that said mine be made a safe place for her husband to work; that on March 31, 1910, he was employed in said mine by defendant as a coal digger; that while so employed, and while preparing to leave the mine at about 2 o'clock in the morning of that day, contrary to defendant's duty not to fire shots before deceased left the mine, there was a shot fired therein which caused an explosion which resulted in his death. She further alleges that she is unable to designate the exact person guilty of negligence resulting in his death, but, in effect, upon information and belief, charges that the explosion was caused by reason of the negligence of defendant in failing to properly inspect for gas, and in permitting it in dangerous quantities to accumulate therein and at the working places, and also large quantities of inflammable coal dust to also there accumulate, and in the main slope and at and near its face, and clog the air, and that defendant negligently failed to remove or dampen said dust as required by law (Rev. Laws 1910, secs. 3982 and 3975), and failed to provide, besides other proper appliances, by proper appliances a means of forcing through said mine fresh air in sufficient quantities to dilute and render harmless and expel the gas therefrom. She further charges that by reason of the negligence complained of said mine became, and was, an unsafe place for deceased to work, in consequence of which said coal dust became ignited and exploded the mine, and killed her husband, to her damage in a sum certain. On October 16, 1911, defendant moved the court to require plaintiff to separately state and number her causes of action, and later a motion to strike, which were overruled, whereupon plaintiff amended her petition as stated. After defendant had filed an amended answer and an amendment thereto, in effect a general denial, a plea to the jurisdiction, contributory negligence, and assumption of risk, and plaintiff had replied, in effect a general denial, there was trial to a jury, and verdict and judgment for plaintiff. After motion for a new trial filed and overruled, defendant brings the case here.

As there is no merit in the contention that the court erred in overruling the motions aforesaid, and it is not contended that the petition fails to state a cause of action, or that the evidence was insufficient to take the case to the jury on the question of the master's negligence, we need only determine whether the court erred in admitting certain evidence, or erred in instructing the jury as hereinafter set forth. The theory of plaintiff was that defendant was negligent in permitting Cunningham to work in the mine without wetting the accumulated coal dust, which had clogged the air, and in failing to inspect the mine for gas, as required by law, and that said failure and the consequent gas and dust explosion was the proximate cause of the injury. Defendant defended on the theory that it had complied with the law by wetting the accumulated coal dust and in inspecting for gas, and had furnished deceased a reasonably safe place in which to work, and that the explosion was caused by a "windy shot" igniting the coal dust produced and suspended in the air by a "follow shot," that both were fired by the shot firers Coffman and Boyd, and that Cunningham assumed the risk and was guilty of contributory negligence in staying in the mine contrary to orders, knowing the shots were to be fired. The evidence reasonably tends to prove that, at the time he was killed, deceased was in the employ of the defendant as a coal digger doing contract work, and on the night he was killed was working on the night shift with five others in its mine No. 2, near Wilburton. The mine ran into the ground on a slope at an angle of some 37 degrees, with a mouth about five by eight feet. The length of the slope was about 1,800 feet, with twelve entries to the rooms, from which the coal was mined, one each side and some distance apart, beginning within a few feet of the mouth. These entries were designated as "first east," "first west," "second east," "second west," etc., and extended on both sides down the slope to within some 60 or 80 feet of the face, where they ended with the twelfth east, on which work of opening it up had progressed some 20 feet at the time of the injury complained of. The coal was conveyed in cars from out these rooms onto a track running the length of

the slope, and from there conveyed in a "trip," consisting of one or more cars coupled together, with cable attached, and drawn to the top by steam power located outside and near the mouth of the mine.

The proof as to the existence of dust in the mine was substantially as in the Coffman case, *ante,* 143 Pac. 30, that is: In every entry down to the twelfth there were abandoned rooms in which the coal dust was not sprinkled, but with this exception, as far down as the tenth entries there seems to have been no dereliction of duty on the part of defendant in this particular. From that point down, however, the record discloses the dust was never sprinkled, but was permitted to accumulate in the rooms and entries, on the walls and timbers, along the slope, and on the track, and clogged the air. To be sure, the slope was cleaned a few days before the explosion, but not so as to prevent the cable attached to the "trip" from beating it into the air from the floor between the tracks. So flagrant, indeed, was the violation of the statute that a grievance committee of the miners, on some two or three occasions before the explosion, complained to the mine boss and warned him of the danger; but little, if any, heed was paid thereto, and nothing was done towards alleviating the condition by sprinkling, as required by law. As to the presence of gas in the mine, it is sufficient to say that a few days before the explosion the whole mine was laid off on account of some thousand cubic feet of gas being found in a room in the tenth entry, which was afterwards cleared away; that from time to time, leading up to and within a few days of the explosion, gas had been found in various parts of the mine; that, while Boyd, a digger and shot firer, on the night shift "ran the bottom" for gas, it was not within the terms of his employment, and he did not inspect other portions of the mine; and that, notwithstanding the fact that gas would accumulate in a few hours in explosive quantities in various places therein, the evidence tends to prove that after the day inspector quit, which he did when Boyd came on duty, no further inspection was had, other than as stated by Boyd, until he came on duty again. In short, the evidence reasonably tends to prove the presence of gas

in the mine in dangerous quantities at the time of the injury complained of, owing to defendants' failure to properly inspect therefor.

Thus matters stood when, about 6 o'clock in the evening of March 30th, the deceased entered the mine as one of the night shift, consisting, among others, of six diggers. The shift was engaged in sinking the slope and turning the twelfth east entry and driving the air course. Among the six diggers were Boyd and Coffman, who were also hired as shot firers. Before leaving the mine at about 2 o'clock in the morning of the next day shots were set by them, one on the face of the slope and two in the air course about 25 feet apart, whereupon it seems, after being touched off by the shot firers, all the shift left in the mine attempted to leave the mine before the shots exploded, and were in the "trip" about opposite the tenth entry on their way out when the shots went off and the explosion occurred which killed the shot firers and the three other diggers, including the deceased, whose body was found just below the ninth entry. All being killed who were in the mine at the time, it was impossible for plaintiff to prove precisely how the explosion occurred. Her theory was as stated, and that the shots were fired, which caused the explosion, before deceased had time to leave the mine; and, as it is not contended that there was no evidence reasonably tending to prove it, and as the jury accepted her theory and rejected the theory of defendant, evidenced by the verdict in her favor, the first thing left for us to consider is the instructions of the court. If fairly instructed on the issues joined, in the absence of the admission of incompetent and prejudicial evidence, the judgment must stand; otherwise, not.

It is assigned that the court erred in instructing the jury that:

No. 14. "You are instructed that the ordinary risks assumed by the employee are such perils only as exist after the employer has used due and ordinary care and precaution to guard the employee against danger, by providing him a reasonably safe place to work in, reasonably safe material to work with, considering all of the conditions present on the particular

occasion; and you are instructed further that the employee is not in law held to assume risks resulting from the negligence of the master."

No. 15. "By assumption of risk, as applied in this case, is meant the ordinary risks and hazards of the employment, which the servant assumed by the contract of his employment at the time he engaged in the service of his employer. * * *"

No. 20. "Leaving out of account hazard arising from the violation of statutory duty," deceased assumed not only the risks ordinarily incident to the employment, but, "* * * in addition thereto, he assumed all the extraordinary risks and hazards, whenever arising, which were open, obvious, and apparent, provided he knew such risks and hazards, or had the opportunity by the exercise of reasonable care to know them, and provided the danger arising therefrom was imminent and appreciated by him, and provided he continued at his work without complaint and without promise that such hazard would be remedied; and this is true regardless of whether or not such hazards resulted from the. failure of the defendant to use ordinary care for the reasonable safety of deceased."

It is contended that these three instructions were inconsistent and confusing to such an extent that it cannot be determined which view the jury took or upon which of them plaintiff recovered. It is immaterial. This for the reason that here is the plaintiff leveling her testimony to prove the violation of a statutory obligation on the part of the master, which resulted in the death of her husband. The issue of whether or not the statute has been violated, and, if so, whether such violation was the proximate cause of the death (aside from the issue of contributory negligence), was all there was to be submitted to the jury, and all upon which the court could properly charge. No complaint is made that this issue was not properly submitted to the jury. Where such is the state of the record, the doctrine of assumption of risk has nothing to do with the case, and the plea is not available as a defense. This for the reason stated in the Coffman case:

"That the servant cannot waive a compliance with the statute on the part of the master, or, in other words, the servant does not assume the risk arising from the master's violation of a statutory duty."

We are therefore of opinion that such errors, if any were made by the court in charging on the abstract doctrine in question, are immaterial.

It was contended by plaintiff that defendant was guilty of negligence in firing the shots resulting in the explosion before deceased had time to leave the mine. On the other hand, it was contended by defendant that deceased was guilty of contributory negligence in not leaving the mine before the shots were fired. On defendant's contention the court charged:

"The defendant in this case contends that the deceased, Thad Cunningham, was guilty of contributory negligence, in remaining in said mine while the shot or shots were being fired, if any. On this issue of contributory negligence, you are instructed that if you find from the evidence in this case that the deceased was guilty of remaining in said mine while the said shots, if any, were being exploded or fired, and appreciated the danger thereof, and that the approximate [*sic*] cause of his injuries and death was the result of his negligence in that respect, it would be your duty to find a verdict for the defendant and against the plaintiff, and in determining whether the deceased was guilty of contributory negligence in the particulars herein named, the test will be what a prudent man ordinarily would do under the same or similar circumstances and conditions."

In short, the court charged that knowledge of the danger confronting him in so doing was an essential factor for the consideration of the jury in determining whether defendant in remaining was guilty of contributory negligence. Defendant contends that such is not an essential factor and that the court erred in making it so. Not so. 29 Cyc. p. 518, says:

"While knowledge of danger does not, as a matter of law, defeat recovery for an injury received, yet in all cases it is an important factor for the consideration of the jury, and in many the character of the knowledge and the nature of the danger may be such as to constitute contributory negligence. If the danger is so imminent and threatening that a prudent man, knowing of its existence, would not assume the hazard of encountering it, then it does constitute such contributory negligence as will defeat a recovery. Thus one who voluntarily assumes a position of danger, the hazard of which he understands and appreciates, cannot recover for resulting injury unless there is some reason of necessity or propriety to justify him in so doing."

White on Per. Inj. in Mines, sec. 255, says:

"Negligence can only be affirmed in respect to conditions and dangers appreciated by the party charged therewith. Hence a miner will not be denied a recovery, on the ground of contributory negligence, unless it is established that the conditions and the resulting danger were such that he understood it, or ought to have known and appreciated the risk his acts would subject him to."

It follows that the court did not err in giving the instruction, or in refusing to give requested instruction No. 15.

Neither did the court err in refusing to give the fourteenth requested instruction for defendant. It read:

"If you find from the evidence in this case that the Great Western Coal & Coke Company, or its authorized officers or agents superior in authority to the deceased, and having the authority to give the deceased such instructions, instructed the deceased to leave the mine where he was working before the shots were fired therein, and that the deceased, knowing that such shots were about to be fired, violated such instructions and remained in the mine, having at his command the opportunity and means of leaving the mine, while said shots were being fired, and that the shots caused the explosion, and that his failure to leave the mine while said shots were fired, wholly or in part, was one of the direct, immediate, and proximate causes of his injury and death, the plaintiff cannot recover in this case, and you will find your verdict for the defendant."

In refusing to give this instruction, assuming the law to be as therein stated, the court was right in holding in effect that there was no evidence tending to prove that deceased, knowing the shots were about to be fired, had at his command an opportunity to leave the mine before the shots were fired. The most that can be said in favor of such means and opportunity is, the evidence discloses, that for a month prior to the explosion this night shift, contrary to orders, had been in the habit of remaining in the mine while shots were being fired; that on this particular night, as the last trip of coal left for the top, these men were at the face of the slope, together with the shot firers, preparing powder to fire the fatal shots; that when the last load of coal got to the top and was discharged the engineer received a signal to return the trip empty to take

out the diggers; that he did so at once, and halted it about 150 feet from the foot of the slope; that without any unreasonable delay he received a signal to bring the trip out, which he at once obeyed, and, as it came about opposite the tenth entry, the explosion occurred. It is clear from all the circumstances, the appearance of dinner buckets and lamps in the trip and the position of the bodies when found, that all the men were coming out with all due haste when the shots and consequent explosion overtook them, and that deceased lost no opportunity to leave the mine after his work was finished and before the shots were fired. Indeed, his opportunity and means to leave before he attempted so to do or before the shots were fired is not attempted to be pointed out. Neither is it attempted to be shown that he had anything to do with their firing, or was chargeable with knowledge of when the shots would be fired. Indulging the presumption, as we must, in the absence of testimony, that deceased when killed was in the exercise of ordinary care, we cannot say that the testimony reasonably tends to show that deceased had at his command the opportunity and the means of leaving the mine before the shots were fired, and that he, knowing they were about to be fired, remained in the mine. For that reason the court did not err in refusing to give the requested instruction.

Although the petition charges defendant to have been negligent in firing the shots which caused the explosion, before the night shift had left the mine, plaintiff made no attempt to direct the attention of the jury to the character of the shots or their location. To escape liability, defendant, however, introduced evidence to show the location and effect of the shots. On cross-examination evidence developed from these same witnesses tending to show that the shot firers were negligent in the preparation and firing of these shots and that such negligence contributed to or caused the explosion. In this state of the record it was not so far without the issues as to amount to reversible error for the court to charge, as he did (instruction No. 5) in effect, that there was evidence tending to prove that a fellow servant of deceased fired, in an unskillful and care-

less manner, a shot in said mine which contributed to or caused the explosion, and that the negligence of the fellow servant, if the jury found him to be negligent, was the negligence of the master, and in refusing to charge (as requested, No. 27) that the jury disregard any possible negligence on the part of the shot firers.

During the trial much evidence was introduced by plaintiff, over objection, with intent to prove that at the time of the explosion the mine was in an explosive condition and that the accumulation of gas therein in dangerous quantities had resulted from defendant's failure to inspect. This is assigned as error, on the ground that the evidence did not tend to prove such condition existing at the time the explosion took place. Although the accumulation of gas testified about was discovered at various times prior to the explosion, in various places in the mine, we do not think those discoveries were so remote as to be disconnected with the condition of the mine at the time of the explosion. This for the reason that the evidence discloses that no mine in this field was free from gas, and that the same could accumulate in dangerous quantities almost anywhere in the mine in the space of three or four hours, and that at the time of this explosion an inspection of the whole mine had not taken place for some 23 hours prior thereto.

It is a well-settled and familiar rule that evidence of the condition of the place where the injury occurred, a reasonable time before the occurrence, is admissible as tending to show its condition at the time of the occurrence, especially where it is further shown that those conditions have not changed. 29 Cyc. p. 614, says:

"Evidence of the condition of the place where plaintiff was injured, a reasonable time before the accident, is admissible for the purpose of showing the condition at the time, when it is shown that the condition had not changed. The limitation on the admission of such evidence is that it must be such, in character and point of time, as to justify the inference that the place was in bad condition at the time of the accident. The court may, however, in its discretion, reject evidence of previous con-

dition, even if, under special circumstances, it would be warranted in admitting it."

See, also, Personal Injuries in Mines (White) sec. 80; *Linton C. & M. Co. v. Persons,* 11 Ind. App. 264, 39 N. E. 214; *Island Coal Co. v. Neal,* 15 Ind. App. 15, 42 N. E. 953; *Meyers v. Highland Boy Gold Mining Co.,* 28 Utah, 96, 77 Pac. 347; *Johnson v. U. P. Coal Co.,* 28 Utah, 146, 76 Pac. 1089, 67 L. R. A. 506; *Taylor, etc., Ry. Co. v. Taylor,* 79 Tex. 104, 14 S. W. 918, 23 Am. St. Rep. 316; *Penn. Tel. Co. v. Varnau* (Pa.) 15 Atl. 625; *Swadley v. Mo. Pac. Ry. Co.,* 118 Mo. 268, 24 S. W. 140, 40 Am. St. Rep. 371.

Evidence was also introduced in effect that the company was in the habit of furnishing the shot firers frozen dynamite with which to fire their shots, and that the use of such would sometimes cause a windy shot, which would throw fire, according to the testimony of one witness, sixteen rooms. There was no error in the action of the court in refusing to instruct the jury, in making up their verdict, to disregard all testimony concerning frozen dynamite. This for the reason that, as defendant attributed the explosion to a windy shot, it was proper for plaintiff to introduce this evidence, which tended to show what brought about that kind of a shot on this particular occasion.

Of the remainder of the 52 assignments of error set forth and strenuously argued by defendant in its 240-page brief, with citation of authority in support of but few of them, we need not speak, except to say we have examined them all with much care, and, finding no error, the judgment is affirmed.

All the Justices concur.