## WHITEHEAD COAL MINING CO. v. SCHNEIDER.

No. 10076—Opinion Filed July 22, 1919.

(Syllabus by the Court.)

**1. Master and Servant—Safety Appliances—Exemptions from Liability.**

In a personal injury action for damages brought by a coal miner, where the allegations in the plaintiff's petition and the proof offered in support thereof show that the plaintiff's cause of action is one arising from the defendant's failure to comply with the provisions of Rev. Laws 1910, secs. 3983 and 3984, in furnishing sufficient props of proper length which were required and requested by the plaintiff, such provisions were to protect the employees of the defendant from a well-known danger pertaining to the services of such employees, being a risk which, from the nature of their employment, they were compelled to assume, and although an employee impliedly waives a compliance with the statute, and agrees to assume the risk by continuing in the service, a court will not recognize or enforce such agreement. To permit owners or managers of mines to avail themselves of such an assumption of risk by its employees would be in effect to enable them to nullify the statute, and that is against public policy.

**2. Damages—Personal Injuries—Excessiveness.**

The plaintiff was 46 years of age and was serving as a miner engaged in digging coal, and was earning $5.00 per day. The lower portion of his spine was injured, his hips and right leg were crushed and the latter partially paralyzed, and for about 2 1-2 years he had been unable to work at his avocation and continued to suffer physical pain and was unable to walk without the aid of a crutch or cane: his injuries were permanent; there is nothing in the record to indicate that the jury were influenced by passion or prejudice. Held: That a verdict for $8,423.33 was not excessive.

**3. Trial—Requested Instructions.**

It is not error to refuse special instructions requested by a party, when the questions covered by the special instructions are included in the general instructions.

**4. Master and Servant—Personal Injuries—Instructions.**

Instructions given by the court and excepted to by the defendant, examined and held: That when considered together with all the instructions they state the law applicable to the case with substantial accuracy.

**5. Appeal and Error—Harmless Error.**

Under section 6005, Rev. Laws of 1910, the Supreme Court is not authorized to set aside any judgment or grant a new trial in any case on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the co, rt, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

**6. Same—Waiver of Error.**

A party cannot complain of the admission of evidence over his objection to a single question, where he permits like evidence of other witnesses to be admitted without objection.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Louis Schneider against the Whitehead Coal Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

William M. Matthews, for plaintiff in error.

E. W. Smith, E. M. Carter, and Charles A. Dickson, for defendant in error.

JOHNSON, J. This is an appeal from the district court of Okmulgee county and is an action for personal injuries. The action was brought in the court below by the defendant in error, Louis Schneider, against the plaintiff in error, Whitehead Coal Mining company, to recover the sum of $11,599.00 for injuries which he claims to have sustained while engaged in digging coal in the coal mine of the plaintiff in error. For convenience the parties will hereinafter be referred to as plaintiff and defendant as they respectively appeared in the court below.

The plaintiff charges in his petition that on the 4th of August, 1915, he was in the employment of the defendant in the capacity of a coal miner and was engaged in the regular prosecution of his duties; that his working place was the fifth north entry, which he alleges "was in a dangerous condition in that it was negligently and carelessly constructed and maintained and the roof or arch thereof was improperly and negligently supported, and the timbers thereof were of insufficient length, to-wit, 2 feet and 2½ feet long, and the defendant company failed and refused to furnish timbers of sufficient length, to-wit, props 4 feet in length, although plaintiff made due demand of A. McVey and W. E. Simmons, assistant foreman, a driver of said defendant company." The plaintiff "was in ignorance of such improper construction and maintenance, and without fault or negligence on his part a portion of the roof or arch of said entry gave way and fell upon the plaintiff, greatly injuring, bruising and damaging him." He says that he sustained serious injuries about his hips and in the lower extremity of his backbone; that a gash was cut in his head and that his right leg is partially paralyzed; that he suffered other and internal injuries, the exact nature of which are unknown to him. At the time the injury occurred he says he was earning $5.00 a day.

The defendant's answer was as follows:

First. A general denial.

Second. By way of affirmative defense it is charged that the plaintiff, at the time he received the injuries complained of, was engaged in the work of driving an entry, and that the place where the accident occurred was the working place of the plaintiff, and was not being used as a passageway for the transportation of coal or men. It was plaintiff's duty to examine and test the roof of his room and ascertain whether or not it was safe; that the condition of the roof of the room was apparent to a casual observer and plaintiff entered with full knowledge of all the facts and therefore assumed all the risks arising from his acts.

Third. The defendant further pleads that the falling of slate rock from the roof of a mine is one of the usual risks incident to the mining of coal, and the plaintiff in entering the employment of the defendant assumed all the risks incident thereto.

Fourth. It is charged that the plaintiff had excavated the coal from under the rock which fell upon him, and had himself created all the conditions which produced the injury complained of. If the roof of plaintiff's working place was carelessly and negligently propped it was due to his own negligence, which directly and proximately contributed to and produced his injury.

To which answer the plaintiff filed a reply consisting of a general denial. The case was tried to a jury and a verdict rendered in favor of the plaintiff for $8,423.33. From a judgment rendered by the trial court upon such verdict the defendant lodged his appeal in this court on July 20, 1918, by petition in error, in which it makes numerous assignments of error, 21 in number, which are considered in its brief in this court under five sub-heads, the first of which is as follows:

1. The court erred in refusing to submit to the jury the defendant's plea of assumption of risk, and in refusing its requested instruction on that point.

The act of negligence of the defendant complained of by the plaintiff was the defendant's failure to provide plaintiff with props of sufficient length to prop up the roof of his working room. The defendant's answer was a general denial, plea of contributory negligence and assumption of risk. The plaintiff's testimony showed that he was 46 years old at the time he received the injuries complained of, that he had been a coal miner ever since he was eleven years old, except a short time during the Spanish-American war when he was a soldier in the army of the United States. That he received the injury complained of on the 4th day of August, 1915, while working in the mine of the defendant known as the Whitehead Mine No. 2, Henryetta, Okla., and had been engaged with the defendant company for about six months; and at the time of the injury was working in his room, the same being the fifth north entry off of the west main entry in said mine. The plaintiff testified in his own behalf, without objection, as follows:

"Q. I will ask you to state, Mr. Schneider, whether or not you received any injury on the 4th day of August, 1915? A. Yes, sir; I had a fall of rock on me the 4th of August, 1915. Q. Was that in your working room, the fifth north entry off of the west main entry in Whitehead Number Two mine? A. Yes sir. Q. Now, Mr. Schneider, prior to the time you were injured state whether or not you had demanded props? A. On the 3rd day of August in the afternoon I ordered some four foot props. Q. Who did you order these of? A. Off of McVey, the driver, and on the 4th, on the morning of the 4th I ordered them again. Q. Who did you order them of the second time? A. Off of McVey and also Mr. Simmons, the assistant boss. Q. Is that W. E. Simmons? A. Yes, sir. Q. The assistant foreman of that

mine? A. He was at that time. Q. Now what time, Mr. Schneider, did you ask for those props of Mr. Simmons? A. Along about, I judge about nine o'clock. Q. Of what date? A. The 4th of August. Q. The day you were injured? A. Yes, sir. Q. About what time were you injured? A. I judge about eleven o'clock or a very little after. Q. Now, Mr. Schneider, at the time you demanded those props of Simmons, what, if anything, was said between you and him? A. I told him I needed four foot props, there were some others there but they were too short in length, they could not be used. He said, 'Yes, I see you need props.' He said, 'Go ahead and I will see that you will get some.' Q. He told you to go ahead with this entry and he would see that you would get props? A. Yes, sir. Q. Now how high was this top which fell, how high was that from the ground? A. Very near four feet, three foot props were too short. Q. Would anything shorter than four foot props have done? A. Would not have done any good, no sir. Q. In what position were you when you were injured? A. Down on my knees wedging up some bottom coal, getting a place ready to get my drill to drill a hole. Q. Why were you drilling this hole? A. I was making holes so I could blast coal off next day."

The testimony further disclosed that about two and one-half years elapsed from the date of the injury to the date of the trial, during which time the plaintiff had attempted to resume work as a miner, but that he was unable to do so on account of his injuries. That he during all of the time suffered more or less physical pain as a result thereof. That immediately following his injuries he was taken to the hospital in Henryetta, where he remained for about three weeks, after which he returned to his boarding place, where he was in bed for about two weeks, when he got out on crutches, and that he had never been able to get around without the use of a crutch or stick since receiving his injuries, and that he suffered pain in his back and hips ever since until the date of trial. That at the time he received the injury complained of he was earning about $5.00 per day, that he had never been injured before and was a stout, able-bodied man. That his right leg had been partially paralyzed ever since receiving the injury, that he was not able to make a living at digging coal any more, and he had no other trade or profession. He testified that he ordered the props off of the driver on the evening of the 3rd and on the morning of the 4th. "The first trip he got in I said: 'I want those props I ordered off of you.' He said: 'I will get them as soon as they get them down from the top.'" Then was asked: "Q. Did he bring any props into your entry before this accident occurred? A.

No, sir. Q. Were any four-foot props in your entry at the time of the accident? A. No, sir."

He testified on cross-examination as follows:

"Q. Now had this rock shown any indication of falling? A. No, sir. Q. Had you noticed any imperfection in the roof there? A. Usually a miner always sounds his place and if he needs props he goes ahead and gets props and sets them. Q. Did you sound your roof? A. Yes, sir. Q. When? A. That morning. Q. Did you find any indication of loose rocks? A. It sounded hollow like. Q. It gave indication that it needed props? A. Yes, sir. Q. Then what did you do? A. I demanded my props. Q. And that is the reason you demanded props because you thought the rock was dangerous? A. I wanted to keep it from getting dangerous: that is what a miner sets props for, to keep it from getting dangerous."

The plaintiff testified that it was the custom in the mine at the time for miners to order their props and timbers off the drivers, and the witnesses, Walter Nichins, Henry Sturling, Jim Bell, Henry Simpson, A. J. Raquet, all of whom were miners working in defendant's mine, testified to the same custom.

The defendant contends in his brief that the court erred in refusing to submit to the jury the defendant's defense of assumed risk, and in failing to give defendant's requested instruction upon that issue, basing the right to such instruction on art. 23, sec. 6, of the Constitution of this state, which is as follows:

"The defense of contributory negligence or of assumption of risk shall in all cases whatsoever be a question of fact and shall at all times be left to the jury."

Citing also the decisions of this court in M., K. & T. R. Co. v. Hudson, 71 Oklahoma, 175 Pac. 743; St. Louis & S. F. R. Co. v. Bousch, 68 Oklahoma, 174 Pac. 1036; C., R. I. & Pac. R. Co. v. Beatty, 27 Okla. 844, 116 Pac. 171; W. F. & N. W. R. Co. v. Woodman, 64 Oklahoma, 168 Pac. 209; St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 156 Pac. 436; C., R. I. & P. R. Co. v. Hill, 36 Okla. 540, 129 Pac. 14.

The authorities cited by the defendant, supra, do not apply and have no application as to the doctrine of assumed risk. The plaintiff's cause of action and his right to recover are controlled by the Revised Laws of 1910, which are as follows:

"Section 3983. Every operator shall employ a competent and practical inside overseer for each mine employing ten or more persons inside, to be called mine foreman.

who shall have charge of the inside operations of the mine, and shall see that the provisions of this chapter are strictly enforced. Said mine foreman, or in case of his necessary absence, an assistant chosen by him, shall devote the whole of his time to his duties in the mine when in operation, and shall keep a careful watch over the ventilating apparatus and the air ways, traveling ways, timbering, pumps and drainage, and shall often instruct and, as far as possible see, that as the miners advance their excavations, all dangerous slate and rock overhead are taken down or carefully secured against falling therein, or on the traveling and hauling ways; and that sufficient props, caps and timbers of suitable size are sent into the mine when required, which props shall be cut square at both ends, and as near as practicable to a proper length for the places where they are to be used, and which props, caps and timbers shall be delivered to the working force by company men.

"Section 3984. The mine foreman shall see that all miners in said mine are supplied at all times with such timbers, props and cap pieces as are necessary to keep their working places in a safe condition. Such timbers to be sawed square, as near as possible in proper length to fit the working place. All such timbers, props and cap pieces shall be delivered at the face of the miners' working place in said mine by company men. Timbers in this section shall mean all wood to be used by said miners, and if from any cause the timbers cannot be supplied where required, the said mine foreman shall instruct the persons to vacate all said working places until supplied with the timber needed, and shall see that all water be drained or hauled out of all working places before th miner enters, and as far as practicable, kept dry while the miner is at work. The term 'company men' as used in this chapter shall mean those employed regularly as day hands and paid by shift wages."

The allegations of the plaintiff in his petition in substance and effect are that he received the injuries complained of on account of the defendant's failure to comply with the provisions of the statutes quoted, in its failure to furnish him with props of proper length when so requested. The sections of the statute quoted were enacted by the Legislature of this state for the protection of miners while engaged in their labors as such, and have been construed by this court in the case of Great Western Coal & Coke Co. v. Coffman, 43 Okla. 404, 143 Pac. 30; Great Western Coal & Coke Co. v. Cunningham, 43 Okla. 417, 143 Pac. 27; Great Western Coal & Coke Co. v. McMahan, 43 Okla. 429, 143 Pac. 27; Great Western Coal & Coke Co. v. Boyd, 43 Okla. 438, 143 Pac. 36; Great Western Coal & Coke Co. v. Belcher, 43

Okla. 439, 143 Pac. 36; San Bois Coal Co. v. Resetz, 43 Okla. 384, 143 Pac. 46; McAlester-Edwards Coal Co. v. Moffar, 66 Oklahoma, 166 Pac. 740.

In the Coffman case, supra, Mr. Justice Turner in delivering the opinion of this court said:

"It is assigned that the court erred in refusing to instruct that: 'Ben Coffman assumed all the ordinary risks and hazards, if any, of his employment, and all the ordinary risks and hazards, if any, which by the exercise of ordinary care he could have known, and, in addition thereto, he assumed all the ordinary hazards and risks of his employment, if any, if he knew the dangerous condition and appreciated the risk and continued at work in the presence of such dangers; and this is true, if the dangers were imminent, whether such dangers did or did not arise from the failure of the defendants, or any of them, to use that ordinary care for the reasonable safety of Ben Coffman which a reasonably prudent man would exercise for his own safety, and if the death of Ben Coffman was caused by any risk or hazard so assumed by him, the plaintiff cannot recover, and your verdict must be for the defendants.'

"Not so; this for the reason that, as this is an action to recover damages resulting from the violation of a statute (Rev. Laws 1910, sec. 3982), the servant as a matter of law cannot waive a compliance by the master therewith and assume the risk of the master's negligence in failing to comply with the statute. Hence the doctrine of assumption of risk was not available as a defense. What we said as to a waiver of compliance with a statute in Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153, is equally applicable here."

The authorities cited supra decide this question against the contention of defendant, and render all further discussion thereof unnecessary here.

The plaintiff in error's propositions two and three as contained in its brief will be considered together, and they are as follows:

"2. The only act of negligence which the plaintiff charges against the defendant is the failure to deliver props. The evidence shows that they were delivered within an hour, or an hour and a half, after demand was made for them. As to whether or not this was a reasonable time was a question of fact for the jury, and it was error for the court to hold that it was not as a matter of law.

"3. The court erred in refusing to give defendant's requested instruction No. 12, and in permitting witnesses, over the objections of the defendant, to state that Bill Simmons was acting as assistant mine foreman, as agency cannot be proven by the declarations of the agent."

It is true as disclosed by the record that the only act of negligence which the plaintiff charges against the defendant is a failure to deliver props. The plaintiff testified that he requested the driver, McVey, both on the evening of the 3rd and the morning of the 4th to bring him the four foot props. The driver admitted that the plaintiff made such request, but was of the impression that the request on the afternoon of the 3rd was for three foot props. The plaintiff also testified that he made the same request of Bill Simmons, who, he testified, was acting as assistant foreman at the time, which request was made on the morning of the 4th, and that Simmons replied, "I see you need the props and I will have them sent." The undisputed testimony shows that 18 props about three feet in length were delivered by the driver on the evening of the 3rd. The plaintiff testified that they were too short and he could not use them. Witnesses for the defendant gave testimony tending to contradict the plaintiff on that proposition. Counsel for plaintiff in error argues in his brief that the props were delivered in a reasonable time, and complains of the action of the trial court in refusing requested instructions which were as follows:

"Gentlemen of the jury, you are instructed that the only act of negligence charged against the defendant is that it failed to furnish props of sufficient length, upon the request of the plaintiff, Louis Schneider, to prop up the roof of the place at which he was working in the mine. The only question of negligence therefore for you to consider in this case is whether or not the defendant failed to furnish props when proper request was made. If you find that there were sufficient props of proper length at plaintiff's working place to have propped up the rock which fell upon plaintiff, or if you find that the defendant furnished said props with reasonable promptness after plaintiff requested them, then you are instructed that the plaintiff cannot recover, and your verdict should be for the defendant.

"You are instructed that after props have been delivered to the face of the working place of the miner it is his duty to set his props for the purpose of supporting the roof of his working place, and if you find from the evidence that there was a sufficient number of props in his room to have supported the roof of the working place and to have made it safe, and he failed and neglected to set the same, then plaintiff is guilty of contributory negligence and he cannot recover in this action."

It will be found upon examination of these instructions that they go to the questions, No. 1, as to whether the defendant was guilty of negligence on its part, and No. 12, as to whether or not the plaintiff was guilty of contributory negligence on his part.

It is disclosed by the record that the court refused to give the above instructions requested by the defendant, but we think that the questions of law called to the attention of the court by the same were fully and completely covered by paragraphs 6, 7 and 8 of the court's instructions to the jury, which were as follows:

"Gentlemen of the jury, while the law imposes upon the coal company the duty of furnishing its miners with props of proper length to support the roof of the working places. that duty does not relieve or absolve the miner himself of exercising due care for his own safety; and if you believe from the evidence that the plaintiff, Louis Schneider. knew of the dangerous condition of the roof of his working place. or by the exercise of reasonable care could have ascertained that it was in a dangerous condition and continued to work in said room, or if you believe that the defendant company had furnished him with sufficient props, prior to the accident, to prop up his room and that he had failed and neglected to use the same, and if by using the same he could have, in all reasonable probability, prevented the accident. then he was guilty of contributory negligence. and in the event of such findings your verdict should be for the defendant."

"You are instructed, that where a miner furnishes his own working room it is primarily his duty to render the same safe. It is the coal company's duty to furnish, upon request of the miner, sufficient props at the face of the miner's working place, after it has done this duty it then becomes the duty of the miner to prop the roof of his room as the work progresses. If you believe that Louis Schneider was in his own working room and was excavating the coal therefrom. at the time of the accident, it was his duty and not that of the defendant coal company to prop up said room after sufficient props of proper length had been furnished to him by the coal company at the face of his working place. and if the plaintiff was furnished with sufficient props and failed to use them. and has sustained an injury because said roof was not propped up, his injury is due to his own fault and he cannot recover."

"While the law imposes upon a coal company the duty of furnishing its miners with sufficient props to support the roof of said mine, that duty does not relieve or absolve the miner himself from exercising due care for his own safety. and if you believe from the evidence that the plaintiff, Louis Schneider. knew of the dangerous condition of the roof of his working place. or by the exercise of reasonable care could have ascertained that it was in a dangerous condition. and. continued to work in said room, he is guilty of contributory negligence and your verdict should be for the defendant."

The court having fully and fairly submitted the issues to the jury in the foregoing instructions he committed no error by refusing instructions requested by the plaintiff. Gratz v. Jenkins, 73 Oklahoma, 175 Pac. 527; St. L., I. M. & S. R. Co. v. True, 71 Oklahoma, 176 Pac. 758.

The plaintiff in error complains because certain witnesses including the plaintiff were permitted to testify over the objection of the defendant that Bill Simmons "was acting as assistant foreman at the time the accident occurred." This contention of the defendant, we think, is without merit. First, because the testimony of the plaintiff, which was undisputed but fully corroborated by the testimony of other witnesses, that it was the custom in that mine at the time of the injury complained of, and had been for a long time prior thereto, for the miners to make their requests for props of the drivers, and that they were supplied by the defendant with such props in that way; and the fact that the plaintiff on the morning of the 4th made an additional request of Bill Simmons, and that Bill Simmons promised to have them sent, the admission of such testimony would not have been reversible error if the same had been objected to by the defendant and admitted over such objection, but the record discloses that the plaintiff testified to that fact upon his direct examination without objection, and that the defendant's counsel cross-examined him upon such testimony without objection, and that it was only on the redirect examination of the plaintiff and the examination of the witness Sturling that they were asked as to the capacity in which Bill Simmons worked, and it was then that objections were made by the defendant, overruled by the court and excepted to by the defendant. And we think that under these circumstances no error was committed, as the procedure had comes clearly within the rule announced by this court in the case of Gaford v. Davis, 58 Okla. 303, 159 Pac. 490, wherein Mr. Justice Sharp, speaking for the court, said: "It has frequently been held that a party cannot complain of the admission of evidence over his objection when other evidence of the same tenor was admitted without objection." Which rule has been announced by this court in the cases of Eichoff v. Russell, 46 Okla. 512, 149 Pac. 146; Winans v. Hare, 46 Okla. 741, 148 Pac. 1052; Reaves v. Reaves, 15 Okla. 240, 82 Pac. 490.

The plaintiff in error's fourth proposition as contained in his brief is as follows: "The evidence conclusively shows that the plaintiff's injuries were not permanent and the damages awarded him are grossly excessive." The testimony of the plaintiff, which was not disputed and was given about two and one-half years after the injury, was in substance that he had ever since the injury suffered severe pain and that prior to the injury he had worked exclusively at digging coal in the mines, that he was earning at the time he received the injury complained of about $5.00 per day. That he was at the time 46 years of age, a robust, hard-working miner, that he had never since the injury been able to work at his trade on account of the injury complained of. At the time of the trial his right leg was partially paralyzed and he was only able to walk by the use of the crutch or cane. And we think in view of this testimony the jury was fully warranted in concluding that the plaintiff's injuries were permanent, and that he would continue to be a cripple and suffer physical pain as a result of the injury complained of for the balance of his life, and that it was a question for the jury to determine from the evidence the amount of compensation that plaintiff was entitled to recover on account of such injuries. The jury returned a verdict in favor of the plaintiff for the sum of $8,423.33. We think the record in this case is such that the jury was authorized under proper instructions from the court to find that this was a case of liability on the part of the defendant, which it did. On the question of the amount of a jury's verdict being excessive this court has announced certain rules which have become well established by the decisions of this court. In the case of Feris v. Shanby, 71 Oklahoma, 174 Pac. 1061, this court, speaking through Mr. Justice Hardy, announced the rule as follows:

"The rule for determining whether damages awarded are excessive is that they must be so large as to strike mankind at first blush as being beyond all measure unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice and corruption. In short, the damages must be flagrantly outrageous and extravagant, for the court cannot draw the line, having no standard by which to ascertain the excess. Railway Co. v. Devore 42 Okla. 534, 143 Pac. 864."

Again, in the case of Railway Co. v. Devore, 43 Okla. 534, 143 Pac 864, the court speaking through Mr. Justice Riddle, referring to the foregoing rule, said:

"We think this rule is sound, for the reason the jury and the trial judge have a much better opportunity than do the appellate judges to measure the actual damages suffered by the plaintiff and the amount which would compensate him for the injury. They have an opportunity of seeing the plaintiff and to discern his manner of testifying, his intelligence and capacity, to note his physical condition, and many other living evidences

bearing upon the issue, including all the attending circumstances, of the larger part of which the appellate court is deprived. The jury, thus being in possession of all the facts and circumstances, is required to pass upon this issue as an issue of fact, under an appropriate charge of the court as to the law. Their solemn finding, returned into court and approved by the trial court, should not be disturbed by this court, unless it comes within the rule hereinbefore laid down."

Following the rule announced by this court in the cases cited, supra, we hold that the contention of the plaintiff in error that the verdict in the instant case is excessive cannot be sustained. St. L., I. M. & S. Ry. Co. v. True, 71 Oklahoma, 176 Pac. 758.

The fifth proposition of the plaintiff in error in its brief is that of "improper remarks of opposing counsel in making his address to the jury," and states that during the course of the argument counsel for plaintiff made this remark: "Where is Bill Simmons, and why has the defendant not produced him here as a witness?" The defendant objected to these remarks and statements, which objection was overruled by the court, to which the defendant excepted. We are not inclined to the view, from an examination of the entire record in this case, that the remarks of counsel complained of in any way affected the verdict of the jury, or that the jury considered such remarks in arriving at the verdict in this case. We think that the error complained of comes within the provisions of Revised Laws of 1910, section 6005, which is as follows:

"Harmless error. No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal. on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right." Democrat Printing Co. v. Johnson, 71 Oklahoma, 175 Pac. 737; Continental Ins. Co. v. Norman, 71 Oklahoma, 176 Pac. 211; Kenworthy v. Pendergrass, 71 Oklahoma, 175 Pac. 939; Silurian Oil Co. v. Morrell, 71 Oklahoma, 176 Pac. 964.

We have examined the entire record in this case, and in our opinion there is no reversible error apparent, and the judgment of the trial court is therefore affirmed.

OWEN, C. J., and KANE, SHARP, HARRISON, PITCHFORD, and HIGGINS, JJ., concur; RAINEY and McNEILL, JJ., not participating.