**FIRST NAT. BANK in TONKAWA v. BEATTY et al.**

No. 24492. April 30, 1935.

W. W. Davis, for plaintiff in error.
Peyton E. Brown, for defendants in error.

PER CURIAM. This is an action commenced by J. H. Beatty and Grace T. Beatty, hereinafter called plaintiffs, against the First National Bank in Tonkawa, a corporation, hereinafter called defendant, to recover the value of a diamond ring pledged as collateral to a note given the bank by plaintiffs, which collateral the defendant bank failed to return upon tender and demand, said ring allegedly having been lost through bank robbery.

Plaintiffs alleged the value of the ring to be $2,950, and prayed for that amount, with interest, less any amount that might be found due and owing to defendant on the note secured by said ring. Plaintiffs further alleged that the defendant bank, through one of its officers, represented that the bank maintained adequate and full insurance for the protection of the said collateral security.

The defendant filed an answer and counterclaim for the balance due on said note, which originally was for $500; denied the value of the ring to be $2,950, but stated that the agreed value of the ring was $1,200; denied that it agreed to keep the ring insured, or to use extraordinary care for the safekeeping of the ring. Defendant further answered stating that said ring was lost through robbery of the bank.

Plaintiffs replied denying such allegations in defendant's answer which controverted plaintiffs' petition. Plaintiffs, in their reply, alleged negligence on the part of the defendant.

All of the allegations in plaintiffs' reply were denied by the defendant.

Plaintiffs made no answer to the cross-petition of the defendant to recover on the note.

In April, 1929, Dr. Beatty sought a loan of $500 from the bank, and offered to pledge as collateral a three and a half carat diamond ring which belonged to his wife. A note was made for a period of three months and was renewed from time to time and was signed by plaintiffs. The evidence shows that before putting up the ring as collateral, Dr. Beatty inquired concerning the bank's insurance of such collateral, and was assured by Mr. Wycoff, the cashier handling the transaction, that the bank maintained adequate insurance protecting Dr. Beatty against loss of such collateral from any cause, and agreed to maintain insurance during the time the bank held the ring. Testimony concerning insurance was introduced by the plaintiffs without objection by the defendant. Later on in the trial the defendant objected to evidence of the same tenor, which objection was overruled.

The testimony further shows that before the bank would accept the ring as sufficient collateral for the $500 note, Mr. Wycoff and Dr. Beatty consulted two jewelers, one of whom, a Mr. Hay, stated that the diamond was worth $2,750. Both plaintiffs and Mr. Hay testified that the ring was worth the sum of $2,750.

The testimony further showed that Mr. Wycoff and Dr. Beatty then walked back to the bank. Mr. Wycoff drew a note for the loan, which contained the following provisions:

"To secure the payment of this note and of any and all other indebtedness which I now owe to said bank, or may owe to it any time before the payment of this note, I having hypothecated the following collateral: One 3½ carat diamond mounted in platinum with 6 small stones being the legal owner thereof, and the value of which I represent to be $1,200 if in the judgment of the holder of this note said collateral should depreciate in value I agree to deliver when demanded, additional security to the satisfaction of the holder hereof, and in default thereof, or in case of default in the payment of this note or any interest thereon, I hereby authorize the said bank to sell said collateral or any part thereof, at public or private sale said bank may become a purchaser of said collateral or any part thereof without any right or equity of redemption therefrom. All dividends and coupons on the above-mentioned collateral shall be paid to the holder of this note until it shall have been fully paid. Said bank is hereby authorized at its option, to apply to the payment of any obligation or liability of the maker hereof, whether now existing or hereafter contracted, and whether or not then due, and whether now held or hereafter acquired by said bank any money in its hands, on deposit or otherwise, to the credit of or belonging to the undersigned."

Then a receipt was given by the bank to Dr. Beatty as follows:

"Received from _____ One 3½ carat diamond ring set in platinum same held as collateral for a $500 note of this date."

The testimony shows that Dr. Beatty asked the cashier, Mr. Wycoff, why the $1,200 figure was inserted. Mr. Wycoff told him it was for the benefit of the bank examiner. Dr. Beatty signed the note and left the ring. Thereafter, two or three times, Dr. Beatty paid a part of the note and renewed the balance, Mrs. Beatty sign-

ing with him. The renewal notes all contained the clause quoted above.

The testimony further shows that on the 25th of April, 1930, the bank was robbed, at which time the diamond ring disappeared; officers of the bank testified that the ring was lost in this robbery. The evidence further shows that, soon after the robbery, plaintiffs tendered the amount due on the note and demanded the return of the ring, which the bank was unable to deliver.

The testimony shows, with reference to the robbery, that armed robbers came into the bank on the day stated above and at the point of guns forced all the employees to lie down on the floor, at which time the tills were looted and one employee of the bank forced at the point of a gun to enter the vault, work the combination of the safe and surrender all the money and valuables therein. The employees and customers were then locked in the vault and the robbers disappeared; that electric alarms were sounded in two or three business houses within six or eight minutes after the robbery.

Defendant demurred to the evidence of the plaintiffs and the demurrer was overruled.

"Demurrer to the testimony admits all the facts which the testimony in the slightest degree tends to prove and all the inferences which may be reasonably drawn from such testimony." Cline v. Butts, 167 Okla. 378, 29 P. (2d) 777.

The jury returned a verdict in favor of the plaintiffs and assessed the amount of recovery in the sum of $2,356.85. This was a general verdict, the jury not stating on what theory it found for the plaintiffs. Under the court's instructions, one of the questions submitted to the jury was that of negligence.

"Where there is evidence on the question of negligence on which reasonable men might differ as to the facts established and from the inference to be drawn therefrom, the question is one for the jury." City of Enid v. Smith, 167 Okla. 381, 29 P. (2d) 765.

"Where there is evidence tending to show negligence by the defendant, it is error to sustain a demurrer to the testimony." Cline v. Butts, 167 Okla. 378, 29 P. (2d) 777.

"The liabilities of a bailee for negligence shall not exceed the amount which he is informed by the bailor or has reason to suppose, the thing bailed is worth." C. O. S. 1921, sec. 5200.

"The bailee must deliver the thing to the person for whose benefit it was deposited on demand, whether the bailment was made for a specified time or not, unless he has a lien upon the thing deposited, or has been forbidden or prevented from doing so by the real owner thereof, or by the act of law, and has given the notice required by section 5190." C. O. S. 1921, section 5187.

We hold that the rule of law as laid down in Spaulding Mfg. Co. v. Lowe, 35 Okla. 559, 130 P. 959, with reference to questions of fact before the jury, applies in this case:

"The instructions given by the court fairly presented the issues to the jury, and the rule has been frequently announced by this court that where there is competent evidence reasonably tending to support every material averment necessary to uphold the verdict, and the trial court in its instructions to the jury fully and fairly states the issues and fixes the burden thereon as the same are presented by the pleadings and evidence, and a verdict is rendered which from all the facts appears to meet the requirements of justice, which is approved by the trial court, and judgment is rendered in accordance therewith, this court will not reverse the order of the trial court denying a motion for new trial."

We hold that there is no merit in defendant's assignments of error Nos. 1, 2, 3, 5, and 6, and that as to defendant's fourth assignment of error, the only questions to be dealt with here are whether or not the note and receipt offered in evidence constitute the entire contract, and as to the admissibility of the evidence with reference to insurance. Upon close inspection of the note and receipt, we believe it is plain from the face of said instruments that they did not constitute the entire contract. In such cases parol testimony is admissible to prove the terms of that part of the contract not in writing. Holmes v. Evans, 29 Okla. 373, 118 P. 144, citing Shephard v. Haas, 14 Kan. 443, which held:

"When the writing does not purport to disclose the complete contract, or if, when read in the light of attendant facts and circumstances, it is apparent that it contains only a part of the agreement entered into by the parties, parol evidence is admissible to show what the rest of the agreement was; but such parol evidence must not be inconsistent with or repugnant to the intention of the parties as shown by the written instrument, for where a contract rests partly in parol, that part which is in writing is not to be contradicted."

Since the writing did not constitute the

entire contract, it was proper for the court to admit proof as to the value of the ring pledged, upon which there was ample proof to sustain plaintiffs' petition, and in view of the fact that the jury did not return a verdict in excess of the value of the ring as proven, this would refute defendant's seventh assignment of error, wherein it claims that a new trial should have been granted because of the influence of passion and prejudice of the jury due to the prejudicial statements of plaintiffs' counsel, causing an excessive verdict. It could not be deduced from reading the note that the parties to the contract agreed that the value of the ring was $1,200, and no more, since at Mr. Wycoff's request jewelers were consulted, one of whom placed a value of $2,750 on the ring according to the uncontradicted evidence.

The defendant next complains of the admission of incompetent and irrelevant testimony on behalf of the plaintiffs over its objection, and the evidence complained of was with reference to insurance, to which plaintiff Beatty testified, that the bank promised to maintain on the diamond ring.

"Q. What, if anything, did Mr. Wycoff tell you about keeping insurance on the diamond ring during the time he had it? A. He told me they kept insurance on all collateral there, he said they kept insurance on diamonds too, they had a policy that covered it. Q. And what did he agree with you that insurance would be maintained during all of the time that he kept that ring? A. Yes."

The defendant failed to object to the introduction of this testimony, but did object to testimony of like tenor later on introduced in the case. We are of the opinion that the defendant cannot be heard to complain of the admission of this evidence over its objection, for the reason that testimony of like tenor had already been admitted without objection. 3 C. J. 815; Gafford v. Davis, 58 Okla. 303, 159 P. 490; Whitehead Coal Mining Co. v. Schneider, 75 Okla. 175, 183 P. 49; National Bank of Hastings v. Oklahoma State Bank, 80 Okla. 239, 195 P. 768; Bower-Venus Grain Co. v. Smith, 84 Okla. 105, 204 P. 265; Rock Island Coal Mining Co. v. Galvin et al., 96 Okla. 95, 220 P. 832.

After careful examination of the entire record, we are of the opinion that the court committed no reversible error in the trial, and that there was no error in the assessment of the amount of the recovery by the jury.

Therefore, the judgment of the trial court is affirmed, and the defendants in error having in their behalf asked for judgment on the supersedeas bond, it is ordered and adjudged by the court that said defendants in error do have and recover of and from the plaintiff in error as principal, and L. P. McDaniel, J. T. Robinson, Elizabeth Rosa Bell Starr, B. F. Humphries, and Patsy McMillen, as sureties on said bond, the sum of $2,356.85, with interest at the rate of six per cent. per annum from September 24, 1932, and the costs of said action to be enforced by the trial court.

The Supreme Court acknowledges the aid of Attorneys Oscar Speed, J. A. Minton, and Fred B. Cornels in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Speed, and approved by Mr. Minton and Mr. Cornels, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion, as modified, was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.